GRANT *v.* GRANT and others.(*a*)

On a bill to establish a lost will, proof must be made of its execution and validity, its contents by two witnesses, its existence at the death of the testator, and its loss.

If established at all, it must be established against all the heirs at law of the decedent. Hence, testimony of the admissions of part of the heirs, does not furnish the requisite proof.

To prove the due execution of the will, each of the statutory requisites must be shown, viz., the testator's subscription at the end of the will; made in the presence of each of the two witnesses, or acknowledged in their presence; its publication; and its attestation by two witnesses at his request.

The declarations of the decedent are not competent to prove the existence or execution of a will.

The evidence to prove the execution of a lost will, was that of a solicitor, who testified that he drew a will for the decedent at the date alleged, that he cannot recollect who witnessed it, that he was in the habit of witnessing wills, and his clerk, if present, usually witnessed them; and of the solicitor's clerk, who testified that the will was drawn up in the solicitor's office, that he cannot say positively who witnessed it, his impression is that he witnessed it, but he cannot say with certainty.

*Held,* that the testimony did not establish the execution of the alleged will.

When a will is produced, subscribed by the testator, with an attestation clause, signed by two witnesses, stating that he subscribed it in their presence, and declared it to be his last will and testament; such subscription and publication will be presumed on proof of the signature of the witnesses, although they have forgotten their occurrence.

Albany, January 9 and 10; New-York, March 2, 1844.

THE bill in this cause was filed by Alexander Grant, to establish a last will and testament alleged to have been made in October, 1835, by his father, Alexander Grant 3d, and lost or destroyed after his death. The decedent died on the 1st of February, 1842, at the age of 84 years. The complainant had for a great many years after he came to manhood, lived in the same house with his aged parents, taken care of them, and conducted the farm. By the will set up in the bill, the decedent

(*a*) This case and the next, and also *Kniskern* v. *Wieting, The Lutheran Churches of St. Johns, &c.,* reported *post,* were heard at a special term held at the capitol, in the city of Albany, on the second Monday of January, 1844.

gave about 300 acres of his farm to the complainant, charged with legacies to his sisters ; and he gave about 84 acres to the children of another son.

The will was such as the decedent would be likely to make under the circumstances.

The widow, heirs at law, and next of kin of the decedent, were made defendants in the suit, and several of them contested the claim. There was a great mass of testimony taken. So much of it as bears upon the point decided, is stated in the opinion of the court.

*L. Monson*, and *S. Gordon*, for the complainant.

*A. J. Parker*, for the principal defendants.

*A. Becker*, for other defendants.

THE ASSISTANT VICE-CHANCELLOR.—It was not contended at the hearing, that the court can establish a will against a part only of the heirs at law and next of kin of the decedent. Therefore, the testimony produced by the complainant, consisting of the admissions and declarations of two or three of the heirs of Alexander Grant 3d, will not aid in determining the question at issue. Those admissions are not evidence against the other defendants. The court is to take *proof of the execution* and validity of the alleged lost will. (2 R. S. 67, § 63.) These facts being put in issue in this cause, such proof must be made as will show the execution and validity of the will, its contents by two witnesses, its existence at the death of the testator, and its subsequent loss. (2 ibid. 67, 68, § 63, 67.) Unless its due execution is made out, it will be unnecessary to examine the subsequent points ; and I will therefore first examine that question.

By the Revised Statutes, " Every last will and testament of " real or personal property, or both, shall be executed and at- " tested in the following manner :

" 1. It shall be subscribed by the testator at the end of the " will,

Grant *v.* Grant and others.

" 2. Such subscription shall be made by the testator, in the " presence of each of the attesting witnesses, or shall be ac- " knowledged by him to have been so made, to each of the at- " testing witnesses.

" 3. The testator, at the time of making such subscription, or " at the time of acknowledging the same, shall declare the in- " strument so subscribed to be his last will and testament.

" 4. There shall be at least two attesting witnesses, each of " whom shall sign his name as a witness, at the end of the will, " at the request of the testator."   (2 R. S. 63, § 40.)

Each of these requisites is indispensable to the due execution of a will, and each must be shown, to enable the court to establish its validity.

I will examine the proofs in this cause, as bearing upon each subdivision of this section.

*First.* It must be subscribed by the testator at the end of the will.

If evidence of the declarations of the decedent were competent to prove the existence and contents of a will, there is doubtless enough in this case to establish the execution of the will in question.   But the authorities are decisive against the competence of such testimony.   *Dan* v. *Brown*, (4 Cowen's R. 483 ;) *Jackson ex dem. Brown* v. *Betts*, (6 id. 377,) and the cases there cited.(*a*)

After the execution of a will is established, and the issue is upon its revocation, my impression is that the declarations of the decedent would be admissible, although they should be cautiously weighed.   See the case last cited, when in the Court for the Correction of Errors, (6 Wend. 187 ;) *Davis* v. *Davis*, (2 Addams' Eccl. R. 223.)

The only evidence in the case that the testator executed the will set up in the bill, is that of Mr. Monson, and his then clerk, Mr. Menzies.

Mr. Monson recollects drawing a will for the decedent, and

---

(*a*) As to the declarations of the decedent to prove a will, where but one witness recollects its execution, see *Reynolds* v. *Reynolds,* (16 S. & R. 82.)

the entry in his book identifies the time, as being October 3, 1835. He cannot recollect who in particular witnessed the will. He was in the habit of witnessing wills himself; and his clerk, if present, usually witnessed them.

Mr. Menzies was his clerk at that time, and he had but one clerk. Menzies states that he recollects of decedent's coming to Mr. Monson's office to have a will drawn, and that Mr. M. drew one. He cannot say positively who witnessed the will; his impression is that he and Mr. Monson witnessed it. He cannot say with certainty. He has a distinct recollection of witnessing a will which Mr. Monson drew for Mr. Forrest a short time previous to this. His impression is that the decedent Grant, who brought a former will with him, did not take away both wills from the office, but of this he cannot speak with certainty. He cannot recollect that any person was in the office except the decedent, Mr. Monson, and himself.

This is the substance of the testimony of Messrs. Monson and Menzies. It will be observed that neither of them says that the decedent executed the will in Mr. Monson's office. Menzies' impression as to witnessing it, assumes by implication that it had been signed. But the fact of the signing is the very first fact towards proving a due execution; and the court can hardly be safe in inferring that fact, when both of the persons brought forward to prove it are silent on the subject. When one appears to recollect nothing about it, and the other only alludes to it by implication, it does not furnish that satisfactory proof upon which alone a court of justice should determine questions of this kind.

The circumstances relied on, viz., the decedent's going there to have a will drawn, Mr. Monson's drawing it, his usual practice to have wills witnessed by himself and his clerk, and the mere impression of the clerk, Menzies, that he did witness it; do not prove to my satisfaction, that the decedent subscribed the will on that occasion.

*Second.* To proceed to the second requisite of a will, a subscription, or acknowledgment of his subscription, in the presence of two attesting witnesses. Were the will produced, subscribed

by the testator, with an attestation clause signed by two witnesses, stating that he subscribed it in their presence; then on proof of the signatures of the witnesses, the truth of the statement would be presumed, even if the witnesses were unable to recollect the fact itself. Indeed, where the witnesses are all dead, a jury has been permitted to presume the due execution of a will *in their presence*, from evidence of the handwriting of the testator and witnesses, although the attestation clause is silent on the subject. But the fact of the signing by the testator, it seems must be stated in the attestation. See *Lord Rancliffe* v. *Parkyns*, (6 Dow P. C. 202.)

This case labors under the difficulty that it does not appear that there was an attestation clause stating the subscription in the presence of witnesses, nor who did attest the will; and if it be assumed that Messrs. Monson and Menzies were the witnesses, then neither of them testifies to a subscription or acknowledgment by the testator in their presence. We have no evidence of a compliance with the statute in that particular, either by an attestation clause with the names of witnesses appended, or by the testimony of any witness in the cause.

The necessity of this proof, in one form or the other, may be seen by the case, *In the goods of James Ayling*, (1 Curteis Eccl. R. 913.) By the ninth section of the new Statute of Wills in England, (1 Vict. ch. 26,) the two attesting witnesses must be present *at the same time*. In the case of Ayling, the attesting clause had two names to it, but it did not state this circumstance. Proof of it was therefore required.

Thus, if the *impression* of Menzies is to be deemed sufficient evidence, there is still wanting the essential fact that the testator subscribed in the presence of the two witnesses. What I have said of the signing the will, I may as well say of the attestation; the impression of Menzies does not, to my mind, prove that the will was witnessed by Mr. Monson and himself. Impressions are a very slender species of testimony. Here the fact, if it ever existed, was as well known to Mr. Monson as to Menzies. Mr. Monson has neither recollection or impression. Menzies has not recollection. He has an impression, but cannot be positive or certain. He does recollect witnessing another

will just before this time. Now this appears to me to be alto-
gether too loose, vague and uncertain, to sustain so important a
fact as the execution of a will and its due attestation. It is not
necessary to dwell upon this point, and I proceed.

*Third.* The next statutory requisite is the publication of
the will.

It was decided in the case of *Brinckerhoff* v. *Remsen*, (8
Paige's R. 488,) *affirmed on appeal*, (26 Wend. 325,) that
under this provision of the Revised Statutes, there must be an
actual publication or declaration by the testator to the witnesses,
in some form, that the instrument is his will. In that case, the
attestation clause contained a recital of publication, but the
witnesses to the will proved that none was made, and the will
was declared invalid. In both courts, it was conceded that
where the attesting clause set forth a publication in the presence
of the witnesses, and their names are signed to it; the mere
inability of the witness to remember the fact of publication, will
not invalidate the will. And if they were dead, proof of their
signatures to such an attestation, would be sufficient evidence
that the will was executed and published in due form. The
result of this decision is, that the statement of the publication
in the attestation clause, will be prima facie evidence of the fact,
on proving the signatures; but proof of the publication must be
made, in some form, to make the will valid.

To illustrate the strictness which prevails on this and kindred
powers, I may refer to the very recent case of *Sir F. Burdett*
v. *Doe, d. Spilsbury,* decided in the House of Lords, June 19,
and August 18, 1843, and reported in 8 London Jurist Rep.
1.(*a*) The question was upon the execution of a power of
appointment over certain lands, which was to be performed " by
" her last will and testament in writing, to be by her signed,
" sealed and published in the presence of, and *attested* by three
" or more credible witnesses." The party executed the power
by a will, which the special verdict found, *was signed, sealed,*

---

(*a*) Since reported in 10 Clark and Fin. 340, and 7 Scott's New Rep. 66.

*and published by her in the presence of three witnesses*, in the following form. It commenced with the words " I, Lydia " H. S., *do publish and declare* this to be my last will and " testament," &c. ; and it concludes, " I *declare this* only to be my last will and testament. In witness whereof *I have to this my* last will and testament, *set my hand and seal*," the 12th day of September, 1789. Signed and sealed by her, and attested thus : " *Witness*, Charles Ball," and the other two witnesses. It was contended that the will was not *attested* in proper form, because the witnesses did not, in their attestation, over their signatures, state that the testatrix did sign, seal and publish it in their presence.

The Court of King's Bench decided that the attestation, in connection with the declaration on the face of the will of the signing, &c., was sufficient. (4 A. and E. 1, *Doe* v. *Burdett*.)

This judgment was reversed in the Exchequer Chamber, by four judges, against three who were for affirmance. (9 A. and E. 936.)

The House of Lords reversed the latter judgment, and affirmed that of the King's Bench. From the opinions delivered, it is apparent that the strongest proof of the actual signing, sealing, and delivering in that case, would not have saved the appointment, if there had not been on the face of the instrument, an attestation of those facts.

In *Allen* v. *Bradshaw*, (1 Curt. 110,) where in a similar case, it did not appear on the will that it *was published*, Sir Herbert Jenner decided that extrinsic evidence of the fact was inadmissible. And see the cases referred to in his judgment, and also in the opinion of Rolfe, Baron, in *Burdett* v. *Doe*, (8 Jurist Rep. 3, &c.) above cited. See also the opinion of Coleridge, Justice, in the same case, where he speaks of the statutes 7 Will. IV. and 1 Vict. ch. 26, (of Wills,) having, in imitation of the New-York Revised Statutes, placed the execution of appointments by will, on the same footing as other wills.

In *George* v. *Rielly*, (2 Curt. 1,) a power in a married woman to dispose by will, " *to be signed and published* by her " in the presence of, and to be attested by two or more credible " witnesses," was exercised by a will *signed and sealed* in the

presence of two witnesses, the attestation clause being "Wit-
" nesses to the execution hereof." Sir H. Jenner held it insuf-
ficient, and refused to admit evidence aliunde, that *publication*
took place. And see 3 id. 160, *Ilott* v. *Geuge.*

To return to the case before me. There is not the slightest
evidence of a publication of this will in any form. No witness
speaks of it ; no attestation clause declares it.

If both Monson and Menzies had testified that they wit-
nessed the will, it would not have sufficed under this provision
of the statutes, unless they had also testified to an attestation
or other paragraph, containing a statement that the decedent de-
clared or published the instrument as his will. In 1835, I
presume that few lawyers had carefully observed the importance
of this new provision of our statute of wills. The will of Mrs.
.Brinckerhoff, before mentioned, was made in February, 1834,
and it was upheld, first by the surrogate of the county of New-
York, and then by the circuit judge ; and the contrary was not
decided by the Chancellor till October, 1840. Therefore, the
evidence of Mr. Monson and his clerk, that this will was *duly
executed,* would not necessarily show that it had been *published
or declared* according to the statute ; and I repeat, that fact
must be shown, in order to establish the will.

*Fourth.* The last requisite to the due execution of a will,
two attesting witnesses, signing at the end of the will at the
request of the testator ; has been partially considered in con-
nexion with the preceding clause of the statute.

The proof does not show clearly or satisfactorily that there
were two subscribing witnesses. If that had been proved, there
would have been no difficulty in inferring the testator's request
from the fact of their attesting the will.

If the alleged will had been in existence and offered for pro-
bate, all these forms of the statute, which together and entire,
are made essential to the due execution of a will, would have
necessarily been proved, before the will could be established.
If the requisites appeared on the face of the will and the at-
testation paragraph combined, then proof of the signing and

Grant *v* Grant and others.

witnessing would establish it. Whether proof of the publication, request, &c., would be admitted, where the will and attestation omitted all mention of them, is not for me to decide here. If admissible, it would of course have to be clear and positive.

This will is said to be lost. But that does not affect the requisites to its due execution. Those must be proved, as if it were present. Not by the same description of evidence, for that is impossible; but by some evidence, and sufficient to show a compliance with the statute in all the provisions before stated.

This has not been done, and without inquiring into the proof on the other interesting branches of the case, I must decide against the bill.(*a*)

The testimony in the suit is certainly very strong against some of the defendants, to show that the decedent had a paper which he considered a will, and that it was either in existence at his death, or had been fraudulently destroyed just before. Nor would there probably be very great difficulty in arriving at the substantial contents of that instrument. Great hardship and injustice may ensue from its loss or destruction, but that consideration cannot enter into the judgment of the court. The law appears to be plain against granting relief to the complainant, and his bill must be dismissed.

As to costs, my conclusion is to give costs to Elizabeth Grant and the infant defendants, but not to the other parties.

(*a*) As to the extent of the testimony requisite to establish the formalities of the execution of wills, see *In the goods of Rawlins*, (2 Curt. 326;) and of Johnson, (2 ibid. 341,) and of Howell, (2 ibid. 342,) *Blake* v. *Knight*, (7 Lond. Jur. R. 633, 3 Curt. 547;) *Cooper* v. *Bockett*, (7 Jur. Rep. 681; 3 Curt. 648;) *Panton* v. *Williams*, (7 Jur. Rep. 865;) *Wood* v. *Hitchings*, (2 Curt. 82.)