## MUNDY *vs.* MUNDY.

In the matter of the probate of the last will and testament of Michael Mundy, deceased.

A will can be cancelled in no other way than by its being burned, torn, or obliterated by the testator himself, or in his presence and by his direction and consent, or by a revocation in writing, executed in the same manner as wills are required to be executed.

A testator asked his wife if she had brought his will from its place of deposit according to his instructions, and at the same time informed her that he wished to burn it up. The wife replied that she had burnt it up. *Held*, that this did not amount to a revocation, the will not having been burnt.

Under the statute of this state, passed in 1814, it was requisite that the witnesses should be actually present, and see the testator sign the will. The act of 1851 makes the acknowledgment of his signature in the presence of the witnesses sufficient.

There is no argument to be drawn from the substitution of the word "*declared*," in the act of 1851, for the word "*published*," in the former act. Whatever would amount to a *publication* would answer the requirement, that it should be *declared* to be the testator's will.

It is manifest that the authors of the act of 1851 did not intend to affect any wills executed in compliance with the requirements of the old act.

The attestation clause to a will is *prima facie* evidence of the facts stated in it; and the instrument will not be rejected because the witnesses fail to remember the mode of its execution.

If there is no attestation clause, there must be affirmative proof of the publication by the testator and of the other requisites.

There must be some declaration by the testator that it is his will, and a communication by him to the witnesses that he desires them to attest it as such. But this need not be by word: any act or sign by which that communication can be made is enough.

*Adrain* and *Blauvelt*, for caveator.

*Mr. Leupp*, for executrix.

THE ORDINARY. This is an appeal from the decree of the Orphans Court of the county of Middlesex, refusing probate to the will of Michael Mundy, deceased. The decree of the court states, " that the paper writing, purporting to be the

last will and testament of the said Michael Mundy, deceased, bearing date the 2d of April, A. D. 1835, and so presented for probate as aforesaid, and *caveat* filed against the same, is not proved to be the last will and testament of the said Michael Mundy, deceased, and that letters testamentary ought not and do not issue thereon." There are no reasons given for the decision of the court; but I presume they did not consider the proof sufficient as to the requirements of the statute having been complied with in the execution of the will.

There was considerable proof taken as to testamentary capacity. There is no room, however, to doubt as to the testator's capacity. Laying out of view altogether the rebutting testimony offered in support of the will, the testimony taken on this point on the part of the caveator does not cast a reasonable doubt upon the competency of the testator to make a testamentary disposition of his property.

There was some testimony taken also in reference to the cancellation of the will. A witness says, " I was at his (testator's) house fifteen years ago, and Mr. Mundy asked his wife for the will, and she said it was at Piscataway-town; she said, to Mr. Mundy, what do you want of it? he said, I want to burn it up; she said, it is at Piscataway-town; she said, when I go down there I will get it: when she came home, he asked her if she had got the will—she said no— what do you want of it? I want to burn it up, he said; she said, I have burnt it up; that was about fifteen years ago." If implicit confidence could be placed in the testimony of this witness, it would not affect the validity of the will. The will was not burnt up. The testator ought not to have relied upon the declaration of his wife. If he had seriously desired to cancel the will, he could have done it without having the will in his possession. The will could be cancelled in no other way than by its being burned, cancelled, torn, or obliterated by the testator himself, or in his presence and by his direction and consent, or by a revocation in writing, executed in the same manner as wills are required to be exe-

cuted. This will was neither cancelled or revoked in the manner directed by the statute.

As to the *execution* of the will, the testator having died subsequent to the fourth of July, 1850, the will must have been executed in compliance with the requirements of the statute of March 12th, 1851, in order to admit it to probate. There is no difference, as to the attestation and execution of a will, between the acts of 1714 and of 1851, except as to the number of witnesses. The former act required *three* attesting witnesses—the last act requires *two* only. There is some difference in the language of the act. The act of 1714 declares that the will shall *be signed and published by the testator* in presence of three subscribing witnesses. The act of 1851 requires it shall be signed by the testator, which signature shall be made by the testator, or the making thereof acknowledged by him, and such writing declared to be his last will and testament. Under the act of 1814, it was requisite that the witnesses should actually be present and see the testator sign the will. The last act makes the *acknowledgment* of his signature in the presence of the witnesses sufficient. There is no argument to be drawn from the substitution of the word *declared* for *published*, as was supposed by counsel. The last act requires no more formality in this respect than the former. Whatever would amount to a *publication* would answer the requirement that it should be *declared* to be the testator's will. It is manifest that the authors of the act of 1851 did not intend to affect any wills which should have been executed in compliance with all the requirements of the old act.

The attestation to this will is as follows : " Signed, sealed, published, pronounced, and declared by the said Michael Mundy to be his last will and testament, in the presence of us," to which is subscribed the names of three witnesses. The will bears date more than twenty years ago. One of the subscribing witnesses, who was the scrivener who drew the will, is dead. Another one, who was quite young at the time, has no recollection of the transaction, but readily re-

cognizes her signature. *Mrs. Manning* has a distinct recollection of the fact of her witnessing the will, but a very imperfect and confused recollection of the particulars of the transaction. In attempting to call them to remembrance, and to give them in detail, she is led into some contradictions, which afforded counsel some room for argument that the statute had not been complied with. The will has the attesting clause, which, if true, shows that all the requirements of the law were fulfilled. Although the witnesses may have forgotten whether they were all present, and saw the testator sign the will, or whether he made any publication or declaration of it, the instrument ought not to be rejected on account of such mere want of recollection. The attestation clause, with the signatures of the witnesses, is *prima facie* evidence of the facts stated in it. It may be overcome by the witnesses themselves, or by other witnesses, or by facts and circumstances irreconcilable with its verity. If there is no attestation clause the case is different. In one case there must be affirmative proof of publication and of the other requisites; in the other, there must be affirmative proof of the want of those requirements. *Grant* v. *Grant,* 1 *Sand. Ch. Rep.* 235; *Remsen* v. *Brinkerhoof,* 26 *Wend.* 324, 339.

The facts which the witness distinctly remembers are consistent with the attestation clause. She recollects distinctly of the testator, her husband, and herself being in the room, and while all there together, her husband called her, and asked her to sign the will as a witness. She has no recollection of testator's saying anything when he signed the will. She says it was understood at the time that he signed it as his will. She says she has a recollection of seeing Mr. Mundy sign the will; that he did not say anything to her when he signed it.

There seems to be sufficient proof of all the requirements except as to his declaring it his will. There must be some declaration by the testator that it was his will, and a communication by him to the witnesses that he desires them to

2 B*

attest it as such. But this need not be done by word—any act or sign by which that communication can be made is enough. The scrivener, in the presence of the testator, says, this is the will of A. B., and he desires you to witness it—the testator standing by—is a sufficient publication or declaration. The form is immaterial. But the witnesses must know it is the will of the testator they are witnessing, and they must witness it at his request. *Mrs. Manning*, at one time, says she thinks her husband signed the will *before* the testator. If the fact were clearly proved, it would not affect the validity of the will. The particular order of the several requisites to the valid execution of a testament is not at all material. *Vaughan* v. *Burford*, 3 *Bradford's Rep.* 78; and in which case it is said, in reference to the declaration by the testator, "the witnesses may be said to have signed at the decedent's request; when their names having been read over to him, and seen by him, he signed the document. The reading aloud, followed by the act of signature, constituted a testamentary declaration."

The decree of the Orphans Court of the county of Middlesex must be reversed, and the will be admitted to probate. Letters may be taken out in this court, or the proceedings may be remanded, and letters taken out in the court below.