In the Matter of the Revocation of the Probate of the Will of MARY A. MYER, Deceased.

CARRIE L. MYER, Individually and as Administratrix with the Will Annexed, et al., Appellants; JOHN V. MYER et al., Respondents.

1. WILL — MENTAL INCAPACITY OF TESTATRIX — ERRONEOUS ADMIS-SION OF EVIDENCE RELATING TO MENTAL DISEASE OF RELATIVES — CODE CIV. PRO. §§ 834, 836.   In a proceeding for the revocation of the probate of a will upon the ground that testatrix, at the time of the execution thereof, was not mentally capable of making a will, it is erroneous to permit the petitioner, in order to supplement and support evidence that the testatrix was afflicted with paresis, and against the objection that such testimony was incompetent and privileged, under section 834 of the Code of Civil Procedure, to prove by two physicians who had attended the mother and brother of testatrix in a professional capacity, and whose knowledge was obtained while attending such persons, and was necessary in order to treat them, that both the mother and brother of testatrix had been afflicted with "general paresis;" since, by the express terms of sec-tion 836, the provisions of section 834 are made to apply to "any examina-tion of a person as a witness," and the fact that the testimony of the physicians related to patients who were not parties to the proceeding or interested therein, and who were dead at that time, does not take it out of the prohibition of the statute.

2. SAME.   Such evidence is also incompetent where there are no facts which tend to show that the paresis with which the mother and brother of testatrix are said to have been afflicted was acquired by them under circumstances which would render it transmissible so as to taint the family blood.   While it is the rule in cases where the mental soundness of an individual is in question, that the insanity of blood relations in the

ancestral line may be shown as tending to establish the fact in issue, indiscriminate and unexplained evidence of diseases afflicting such relations and affecting their mental faculties is incompetent.

3. EVIDENCE — ERRONEOUS REFUSAL TO STRIKE OUT ANSWER OF LAY WITNESS AS AN OPINION. Where a lay witness who had testified in detail as to acts and conversations of the testatrix was asked, "What was the impression they (the acts and conversations) made on you as to whether they were rational or irrational ?" to which the witness answered, "She was irrational, I thought," the denial of a motion to strike out the answer is erroneous; while the question was proper in form the answer was in violation of the rule that lay witnesses are not permitted to give an opinion upon the question of mental capacity.

4. SAME — ADMISSIONS OF EXECUTOR AND LEGATEE — INCOMPETENT AS EVIDENCE AGAINST OTHER LEGATEES. Evidence of admissions and declarations made by the executor and legatee of a disputed will, prior to the execution thereof and to the effect that the mind and memory of testatrix were poor and that she was not capable of doing business, is incompetent as against other legatees, parties to the proceeding and interested in the result, who are not jointly interested with such executor, but on the contrary have different and separate interests.

*Matter of Myer*, 100 App. Div. 512, reversed.

(Argued January 18, 1906; decided February 13, 1906.)

APPEAL from an order of the Appellate Division of the Supreme Court in the fourth judicial department, entered January 11, 1905, which affirmed a decree of the Seneca County Surrogate's Court revoking probate of the will of Mary A. Myer, deceased.

This proceeding was instituted in the Surrogate's Court of Seneca county to procure the revocation of the probate of the will of Mary A. Myer, deceased, upon allegations that at the time of the execution thereof she was not mentally capable of making a will and that its execution was procured by the undue influence of her son, William H. Myer. The petitioners are Mary L. C. King, the only daughter of testatrix, and John V. Myer, her youngest son.

The testatrix died in the village of Lodi, Seneca county, November 11th, 1899. She left a will dated July 11th, 1899, which was admitted to probate April 17th, 1901. She was survived by three children, William H. Myer, Margaret L.

C. King and John V. Myer. She gave the major portion of her estate, consisting of both real and personal property valued at about eight or nine thousand dollars, to her son William H. Myer, and appointed him sole executor. To her daughter Margaret L. C. King she gave nothing, and to her son John V. Myer a life estate in $2,000. She had a number of grandchildren to each of whom she gave $100. The other provisions of the will are immaterial to the questions before us.

Upon the probate of the will in April, 1901, William H. Myer duly qualified as executor thereof. He died shortly thereafter, and on April 14, 1902, his widow, Carrie L. Myer, who was also a legatee, was appointed administratrix with the will annexed. On the same day this proceeding was commenced for the revocation of such probate under sections 2647–2653a of the Code of Civil Procedure. Upon conflicting evidence bearing upon the issues of mental capacity and undue influence, the surrogate rendered a decision wherein he found, "That said Mary A. Myer was an old woman and had for a long time suffered from shaking palsy, which had become chronic; and that at the time of the execution of the alleged will she was and for a long time had been a paretic; that at the time of the execution of the alleged will the testatrix was not of sound disposing mind, memory and understanding, and by reason of mental weakness was incompetent to make the same." There was no finding upon the issue as to undue influence, and a decree was entered revoking the probate of the will.

Exceptions to the decision were filed by Carrie L. Myer, individually and as administratrix, and by the special guardian of four infant grandchildren of testatrix who were also legatees, and from the decree thus entered they appealed to the Appellate Division. That court unanimously affirmed the decree, and the same parties have now appealed to this court.

*J. N. Hammond, Francis C. Allen* and *Benjamin Franklin* for appellants. The surrogate erred in the admission

and exclusion of evidence. (*Naul* v. *Naul,* 75 App. Div. 292.)

*William S. MacDonald* for respondents. Appellants' exceptions to admission of evidence were not well taken and present no prejudicial error. (Code Civ. Pro. § 834; *Matter of Murphy,* 85 Hun, 575; *Pringle* v. *Burroughs,* 70 App. Div. 12; *Holcomb.* v. *Harris,* 166 N. Y. 257; *People* v. *Koerner,* 154 N. Y. 355; *Matter of Lowenstein,* 2 Misc. Rep. 323; *Wyse* v. *Wyse,* 155 N. Y. 367; *Petrie* v. *Petrie,* 126 N. Y. 683.) There is no reversible error in the rulings of the surrogate. (Code Civ. Pro. § 2545; *Matter of Miner,* 146 N. Y. 121; *Loder* v. *Whelpley,* 111 N. Y. 239; *Hobart* v. *Hobart,* 62 N. Y. 80.)

WERNER, J. The unanimous affirmance by the court below precludes the examination in this court of any of the questions raised by the appellants, save those arising upon exceptions taken to the rulings of the surrogate upon the admission or rejection of evidence. Some of the exceptions thus taken present errors which require a reversal of the order appealed from, because it appears that the exceptants were clearly prejudiced by such rulings. (Code Civ. Pro. § 2545.)

The petitioners introduced testimony tending to show that, at the time of the execution of the will, the testatrix was afflicted with paresis, which it was claimed deprived her of testamentary capacity. In order to supplement and support this evidence, the petitioners called two physicians, Drs. Carlton and Townsend. The former had been the medical adviser of the testatrix's brother, and the latter of her mother. These witnesses testified that both the mother and brother of testatrix had been afflicted with what they termed "general paresis;" that their knowledge of this condition was obtained while attending such persons in their professional capacity, and that such knowledge was necessary in order to treat them. The testimony was objected to as incompetent and privileged under section 834 of the Code of Civil Procedure, and the

ruling admitting it was properly excepted to because it was inadmissible upon two grounds. 1. It is clearly within the provisions of section 834, which prohibits a physician from disclosing "any information which he acquired in attending a patient, in a professional capacity, and which was necessary to enable him to act in that capacity." (*Renihan* v. *Dennin*, 103 N. Y. 573; *Feeney* v. *Long Island R. R. Co.*, 116 id. 375; *Fisher* v. *Fisher*, 129 id. 654; *Nelson* v. *Village of Oneida*, 156 id. 219; *Meyer* v. *Knights of Pythias*, 178 id. 63.)

By the express terms of section 836 the provisions of section 834 are made to apply to the "examination of *any* person as a witness." The fact that the testimony of these physicians related to patients who were not parties to the proceeding or interested therein, and who were in fact dead at that time, does not annul the prohibition of the statute. In *Davis* v. *Supreme Lodge* (165 N. Y. 159) the defense sought to prove the cause of death of two aunts of the deceased by the testimony of their attending physicians. The evidence was excluded, and this court upheld the ruling. Judge O'BRIEN, in writing for the court, said (p. 163): "This court has held that the statements of the attending physician, for the purpose of establishing the cause of death either of the insured himself or of his ancestors or their descendants, although not parties to nor beneficiaries under the contract, were not admissible. They are excluded not only for the purpose of protecting parties from the disclosure of information imparted in the confidence that must necessarily exist between the physician and patient, but on grounds of public policy as well. The disclosure by a physician, whether voluntary or involuntary, of the secrets acquired by him while attending upon a patient in his professional capacity, naturally shocks our sense of decency and propriety, and this is one reason why the law forbids it." (*Grattan* v. *Met. Life Ins. Co.*, 80 N. Y. 281; *Westover* v. *Ætna Life Ins. Co.*, 99 id. 56; *Nelson* v. *Village of Oneida*, 156 id. 219.) The general rule of exclusion provided for in section 834 is not obviated in this case by the

exceptions thereto contained in section 836, because the testimony objected to does not fall within either of these exceptions.

2. There is another equally potent reason why this evidence should not have been received. The case is barren of facts which tend to show that the paresis with which the mother and brother of testatrix are said to have been afflicted was acquired by them under circumstances that would render it transmissible so as to taint the family blood. It is doubtless the general and well-established rule that where the mental soundness of an individual is in question, the sanity of the blood relations in the ancestral line may be shown as tending to establish the fact in issue (*Walsh* v. *People*, 88 N. Y. 458), but that rule does not permit indiscriminate and unexplained evidence of diseases afflicting such relations and affecting their mental faculties. There must be evidence tending to show at least that such diseases are hereditary or transmissible. (*Reichenbach* v. *Ruddach*, 127 Pa. St. 564; *State* v. *Van Tassel*, 103 Iowa, 6.) In *Walsh* v. *People* (*supra*) one of the defenses interposed was, that the accused was afflicted with insanity superinduced by epilepsy. It was sought to be shown that a brother was suffering from the same malady. The ruling of the trial court excluding the evidence on the ground that it was not shown that epilepsy produces or tends to produce insanity, and that the disease is transmissible, was upheld. (Wharton & Stilles' Med. Juris. vol. 1 [5th ed.], § 330.) It is a scientific fact of common knowledge that the transmissibility of the malady known as "general paresis" depends to a great extent upon the conditions underlying the disease. The medical writers differ as to its cause or causes, but it seems to be conceded that the majority of cases result from syphilis, while in others it may be superinduced by various excesses or overexertions of the individuals afflicted. (Wharton & Stilles' Med. Juris. vol. 1 [5th ed.], §§ 883, 888.) Whether the particular form of the disease from which the testatrix and her family suffered was of such a transmissible character that she might be

said to have derived it from her ancestors cannot be determined from the evidence in the record, and it is, therefore, difficult to see how the testimony of the physicians was really pertinent to the issue whether the testatrix was possessed of testamentary capacity.

Another exception urged by counsel for appellants relates to the testimony of Abbie Letts, a witness called on behalf of the petitioners. She had testified in detail as to acts and conversations of the testatrix. She was then asked by counsel for petitioners whether such acts and conversations made any impression upon her as to their being rational or irrational. She answered : " I think they were irrational." This answer was stricken out on motion. Counsel for the petitioners then said : " I asked whether they made any impression on you," and she answered, " Yes, they did." The question was then asked : " What was the impression they made on you as to whether they were rational or irrational," to which she answered : " She was irrational, I thought." A motion to strike out this answer was promptly made, but denied under exception by counsel for the appellants. We think the motion should have been granted. While the question was proper in form, the answer was clearly in violation of the rule that lay witnesses are not permitted to give an opinion upon the question of mental capacity. They may only state their contemporary impressions as to the rationality or irrationality of the conversations or conduct testified to by them. (*Holcomb* v. *Holcomb*, 95 N. Y. 321; *Paine* v. *Aldrich*, 133 id. 547; *People* v. *Strait*, 148 id. 569; *People* v. *Youngs*, 151 id. 219; *People* v. *Koerner*, 154 id. 355.) It is obvious that the witness Letts intended to testify to nothing more than her impressions derived from the facts which she had stated, and it is quite probable that the learned surrogate so understood it. The exception is purely technical, and standing alone would not be sufficient to justify a reversal ( *Wyse* v. *Wyse*, 155 N. Y. 367), but since there must be a new trial on other grounds, we call attention to the error so that it may not be repeated.

The only other exceptions which we deem it necessary to discuss arise upon the evidence introduced by the petitioners to prove certain admissions made by William H. Myer, the executor and principal legatee. One witness testified to a conversation had with him in 1895 or 1896, in which he said he thought the testatrix was failing very much; that she was weak and nervous, and that her mind and memory were poor. This evidence was objected to as incompetent, inadmissible, irrelevant and too remote. Another witness testified to a conversation had with him in the spring of 1899 in which he said that the testatrix was failing fast and that she was not capable of doing business any more. This was admitted under objection that it was inadmissible, irrelevant, incompetent, and that the statements of William A. Myer cannot bind the estate of Mary A. Myer.

The will was executed in July, 1899. These admissions were made prior to its execution, and if William H. Myer were the only legatee in interest, they would be competent and cogent evidence against him. But there were other legatees who were parties to this proceeding and interested in the result thereof. They were not jointly interested with William H. Myer, but on the contrary their interests were several. The question raised by these exceptions has been recently passed upon by this court in a case very similar to the one at bar, and there the ruling of the surrogate excluding evidence of the same character was sustained. (*Matter of Kennedy,* 167 N. Y. 163, 177.) In that case we said: "The general doctrine is doubtless correct that the admissions or declarations of a party to the record may be taken as against himself or another party having a joint interest with him, but this rule can have no application to a proceeding to prove a will where other parties are interested in the estate as tenants in common. In this case the admissions or declarations of the nephew could not bind the sister, and since upon proof of a will there can be but one decree, either of rejection or of probate, the declarations of one of the parties cannot, from the very nature of the case, be received as evidence without prej-

udice to the rights of the other. One tenant in common cannot admit away the rights of his co-tenant. Since the will could not have been admitted as to the sister and rejected as to the nephew, the admissions or declarations of the latter were not admissible. The respective interests of the next of kin were not joint, but each would hold his share in severalty. There was no privity between the parties such as would permit the admissions or declarations of one to be received as evidence against the other." (*Dan* v. *Brown*, 4 Cow. 483, 492; *Grant* v. *Grant*, 1 Sand. Ch. 235; *Brush* v. *Holland*, 3 Bradf. 240; *La Bau* v. *Vanderbilt*, 3 Redf. 384, 399; *Matter of Baird*, 47 Hun, 78; *Naul* v. *Naul*, 75 App. Div. 294; *Clark* v. *Morrison*, 25 Pa. St. 453; *Pier* v. *Duff*, 63 id. 59; *Shailer* v. *Bumstead*, 99 Mass. 127; Chase's Stephen's Digest of the Law of Evidence [2nd ed.], p. 69; Abb. Trial Evidence [2nd ed.], pp. 201, 202; 1 Greenl. Ev. § 176.)

Other exceptions have been brought to our attention, but we do not regard them of sufficient importance to justify discussion.

The decree of the surrogate and the order of the Appellate Division should be reversed and a new trial ordered before a jury in the Supreme Court, costs to abide the event.

CULLEN, Ch. J., O'BRIEN, HAIGHT, VANN and WILLARD BARTLETT, JJ., concur; HISCOCK, J., not sitting.

Ordered accordingly.