In the Matter of the Estate of BERNHARD KUPFER, Deceased.

Surrogate's Court, New York County, December 2, 1930.

*Cadwalader, Wickersham & Taft*, for the proponent.

*I. Gainsburg*, for the contestant.

FOLEY, S. In this contested probate proceeding the various objections raised issues, (1) as to the lawful execution of the will, (2) undue influence alleged to have been exercised upon the testator in the procurement of the will, and (3) fraud, likewise claimed to have been exercised. The usual objection raising the issue of mental incapacity was not asserted by the contestant. The soundness of mind of the maker of the will was, therefore, conceded. The will was executed on January 15, 1930. The testator died on February 9, 1930, leaving a gross estate which amounted to approximately $236,000. The contestant is Milton Kupfer, a nephew of the decedent. The will is a natural one. The testator made various bequests in the instrument to his nephews and nieces and other relatives in this country and Germany. The residuary estate was given to his only brother, Louis Kupfer.

On the issue of the execution of the will the testimony clearly established compliance with the requirements of the law. The will was drawn by an experienced attorney. Its execution was supervised by him and he and an attorney employed by him became subscribing witnesses to it. While their testimony differs in minor details, the essential elements of execution were established without question. A verdict was, therefore, directed by the surrogate in favor of the proponent on the questions dealing with this issue. (*Matter of Ewen*, 206 App. Div. 198, 200.)

There was no evidence of undue influence exercised upon the

testator by his brother, Louis Kupfer, or by any other person. The decedent had been a successful business man in New York city. At the time of the execution of the will he was sixty-five years of age. It appears from the testimony of the witnesses on both sides that at that time his mind was clear. His brother and he had been engaged in business together and their relations continued friendly and affectionate up to the testator's death. An unusual picture of his fixed and continuous testamentary purpose is presented by his prior wills which are in evidence. The earliest of these instruments is dated December 5, 1922. Then follow wills of April 10, 1925, March 3, 1928, October 15, 1929, December 25, 1929, a codicil dated December 27, 1929, and the will here in question executed January 15, 1930. These six wills also display a remarkable similarity of form and substance. The brother is the residuary legatee in each. The various bequests are substantially similar in amount or disposition. The individual executors are the same in each. Most important of all is that in each of the six wills the bequest to the contestant here, Milton Kupfer, is the same — $5,000. As to the two last wills there is in evidence two memoranda in the decedent's handwriting which set forth in general terms the names of the beneficiaries and the amounts directed to be paid to them. While certain legacies contained in the original will to the German beneficiaries were omitted in subsequent wills, provisions were made in an indirect manner for these relatives by the testator. He made a bequest to his brother and his former business partner in the last will of $125,000, and left a letter of instructions for him to distribute this amount in certain specified shares. The validity of that instrument and the disposition made by it are not involved in this proceeding. (*Matter of Webb*, 122 Misc. 129; affd., 208 App. Div. 793.) The evidence adduced by the contestant against the validity of the will is extremely meagre, most of it is mere conjecture, surmise or suspicion. The evidence of the attorney, Mr. Levy, that he received part of the instructions from Louis Kupfer for the drafting of the previous will of December 25, 1929, which contained almost exactly the same provisions embodied in the contested paper, is insufficient to create an issue for the jury. Mr. Levy testified that he had previously received thorough instructions for the preparation of that will from the testator himself. If any change was made at all by the alleged instructions of Louis Kupfer between December 22 and December 25, 1929, it resulted in only a minor alteration with respect to the method of appointing a substitute executor or trustee. The slight evidence of the attempt of Louis Kupfer to prevent the contestant and his mother from seeing the testator is negatived by her testimony that she or her

son were able to make such visits almost daily for the two weeks before the execution of the contested paper. There was no evidence of direct pressure, coercion, duress or domination exercised upon the maker of the will in connection with the testamentary act.

On the issue of undue influence there was no evidence to carry the case to the jury and the verdict was directed in favor of the proponent upon this question. (*Matter of Ruef*, 180 App. Div. 203; affd., 223 N. Y. 582; *Matter of Price*, 204 App. Div. 252; affd., 236 N. Y. 656; *Matter of Kennedy*, 229 id. 567; *Matter of Case*, 214 id. 199; *Matter of Rogers*, 127 Misc. 428; affd., 220 App. Div. 834.)

On the issue of fraud there was an entire lack of evidence tending in any way to establish it. A verdict was, therefore, directed in favor of the proponent on this question.

Counsel for the contestant attempted to prove certain admissions made by Louis Kupfer, the person charged with undue influence, after the execution of the will or after the death of the testator, tending to show the exercise of undue influence. This testimony was excluded by the surrogate because of its incompetency. (*Matter of Myer*, 184 N. Y. 54; *Matter of Kennedy*, 167 id. 163; *Matter of Van Dawalker*, 63 App. Div. 550.) The rule laid down in these authorities is that the admissions of a legatee made after the execution of a will cannot prejudice the rights of other legatees, since the parties are interested in the estate as tenants in common and not joint tenants. One tenant in common cannot admit away the rights of his cotenant, and the admissions made after the execution of the will by a legatee are, therefore, incompetent against other legatees.

Submit decree admitting the will to probate in accordance with the special and general verdict as directed by the surrogate.