This is an appeal from a decree of the Passaic county orphans court affirming the decree of the surrogate of the county of Passaic admitting to probate the will of Sophie Wilson, deceased. The will was executed on the 30th day of March, 1922, the day before her death. By its terms she conveyed to her brother-in-law, David Wilson, and Annie Wilson, his wife, all her estate, which consisted chiefly of a house in Passaic. The will is contested by her sister on the grounds of improper execution of the will, undue influence and lack of testamentary capacity in the administratrix.
William Wilson, the husband of testatrix, whom she had married in 1918, was killed in an automobile accident in May, 1920. By his will he devised to her the real estate which is now the bulk of her estate. Before his death she was a strong healthy woman but within a few days after his *Page 605 
funeral she suffered a severe nervous breakdown, and on May 14th, 1920, she was committed to the state hospital at Morris Plains as an insane person and on April 21st, 1921, her brother-in-law, David Wilson, was appointed her guardian. On March 25th, 1922, she was brought back to her home in an extremely feeble physical condition and almost at the point of death and as stated she died on March 31st, 1922. There is no dispute as to any of the foregoing facts.
An attack is made on the validity of the will on the ground that the requisite formalities attending its execution were not complied with, in that at the time she signed it by her mark testatrix did not declare the document as and for her last will and testament. No particular form of words are necessary to comply with this requirement so long as it is made clear to the witnesses that it is a will and that the testatrix knows that such is the fact. Mundy v. Mundy, 15 N.J. Eq. 290. The day before the execution of the will the document was read to her by one of the doctors in attendance upon her and he asked her if she cared to sign it to which she replied she was too weak and tired. The next day one of the witnesses to the will, who was nurse in attendance upon her, read the will to her and the will was then handed to the testatrix and she signed it by her mark. She was asked if she wanted to sign it and she said "yes." She was then asked if she wished the witnesses to sign the paper and she said "yes." It thus clearly appears from the reading of the document to her that both she and the witnesses knew it was a will and her reply in answer to question put to her clearly shows that she wished to execute it and have the witnesses sign it. This constitutes a sufficient compliance with the requirements as to publication and declaration.
It appears that at the time testatrix was committed to the hospital she was a lunatic and was in such a mental condition that she would have been incapable of executing a valid will. There is a presumption that the incapacity continues but this presumption is not conclusive but may be rebutted. In reColman's Will, 103 Atl. Rep. 521. *Page 606 
The mental capacity requisite to make a will is very low.Clifton v. Clifton, 47 N.J. Eq. 227.
The testimony as to the mental condition of the testatrix at the time of the execution of the will convinces me that she had sufficient mental capacity to execute a valid will. The history of her case shows that her insanity was brought on by a violent shock and it would seem a fair inference from all the testimony as to her conduct and condition while in the state hospital that she gradually became quieter and more nearly normal mentally, while there was a steady deterioration in her physical condition. The testimony of the nurse who had charge of her during the last few months she was in the state hospital clearly indicates that she was rational. As against this there are the opinions of two doctors from the hospital, one the head physician, the other one in charge of her ward. It was shown that the head physician had scarcely any personal contact with her and had substantially no knowledge of her individual case on which to base an opinion. The other doctor had more opportunity and in fact saw her daily. It would appear from the testimony of the nurse, however, that the testatrix seemed to have a fear and dislike for this particular physician and shrank from any conversation or relations with him so that in his presence it is likely that she did not display her natural degree of mental alertness. There is also testimony to show that her mental condition materially improved when she was transferred from a public ward and this improvement is more or less in proportion to the degree of isolation and quiet that she had. At any rate when she was taken from the hospital to her own home the testimony of her nurses there and of one of the doctors who attended her is to the effect that although she was in an extremely feeble physical condition she was entirely rational and knew what she was doing. In my opinion from all the testimony she had sufficient mental capacity to execute the will.
I fail to find any undue influence. The terms of the will were themselves entirely natural under the circumstances. *Page 607 
The bulk of the estate had come to her from her husband and it was entirely proper that it should go to his people. In addition, the two beneficiaries had been kind to her and she would naturally feel grateful to them. On the other hand there was no reason, except the mere tie of blood, why her sister, the caveator, should receive anything from her. There was no affection or even friendship between them, and there had been no communications or relationship for many years. They had not even seen each other for about twenty years and in effect were total strangers.
The will in question was prepared by one of the beneficiaries but neither of them was present when it was executed and there is no evidence whatever that any pressure was brought to bear upon the testatrix to induce her signature. In fact one of the nurses testified that the testatrix on the day of the execution expressed her regret that she had not signed the will the day before and volunteered the information that the will carried out her intentions. The mere fact that the beneficiaries were kind and good to her during her illness, which naturally would arouse gratitude in her, would not be undue influence. In re Craft'sEstate, 85 N.J. Eq. 125.
The decree of the orphans court will be affirmed.