In the Matter of the Estate of JACOB ESTERHELD, Deceased.
Surrogate's Court, Monroe County, May 2, 1940.

*Snyder & Grossman* [*Merwin Morehouse* of counsel], for the petitioners.

*Chamberlain, Page & D'Amanda* [*Arthur V. D. Chamberlain* of counsel], for certain contestants.

*J. J. McInerney* [*J. J. McInerney, Jr.,* of counsel], for certain contestants.

*Hyman G. Gould*, special guardian.

FEELY, S. This testator died in his late sixties, without ever having married, but leaving as his nearest relatives four brothers, a sister and the children of two deceased sisters. Two of the other brothers each lived in their own homes across the street from the home owned by testator, and another brother in his own home across a driveway between their two houses. Another brother, Frank, who is one of the nominated executors, lived at a distance; but for some years had been a part owner with the testator of a summer cottage at Conesus Lake. For the last fifteen years of his life, a niece, who is the other nominated executor, kept house for this testator. It was not surprising, therefore, to find that testator left the bulk of his estate, about half to the niece who had been his

housekeeper, and about the other half to the brother with whom he shared the cottage, and to the latter's children. The others appeared to be settled in their own homes.

The jury, by a vote of ten to two, found that the will, made by the testator nine days before his death from heart disease, was not procured by undue influence.

In answer to contestants' present motion for a new trial, it has been well said that the facts were such that reasonable persons might differ in their interpretation of them; and that the contestants had had a trial under more favorable conditions than they could have hoped to have lawfully had.

The contestants' case depended largely on admissions against interest made by the two executors, which were elicited on examination before trial; and against some other statements of these witnesses so examined, there was considerable contradiction directed.

The contestants began by reading to the jury parts of the examination before trial. Although the proponents' counsel were present at the prior examination, but did not then cross-examine, and although at the time of the proffer the two executors were in court, and were offered to contestants to be put on the stand, the contestants adopted what might seem the less fair and less satisfactory method of presentation, and proceeded along the line aforesaid, which is held to be established practice. (*Matter of Green*, 155 Misc. 641, 650.)

The substance, rather than the method, was very advantageous to the contestants, and very prejudicial also to proponents because of its inadmissibility under a long line of cases applying to contested probate the rule that " the fact that two persons have a common interest in the same subject matter does not entitle them to make admissions respecting it as against each other," when the absence of one forestalls the inference of acquiescence or approval. The fullest discussion of the rule will be found in *Matter of Baird* (47 Hun, 77), tried in this court in 1888, with the names of counsel there engaged including those of Shuart, Benton and W. E. Werner, all of whom have been on the bench; and the last one named wrote the doctrine of the *Baird* case into the opinion in *Matter of Myer* (184 N. Y. 54), citing *Matter of Kennedy* (167 id. 163) and other cases. The latest ruling is *Matter of Kupfer* (138 Misc. 821).

At the first offer of this evidence of admissions, the proponents' only objection was that they were being deprived of the right to cross-examine, but they had had the opportunity, and did read to the jury all of the examination before trial that the contestants had omitted to read.

Had the proponents invoked the rule exemplified in the *Baird* case, the evidence would undoubtedly have been excluded.

It was only later, when other admissions were sought to be proved, and contradiction made by contestants on the then state of the record, that the rule just mentioned came into discussion. This was not the only case where able trial counsel on both sides were surprised, because the validity of the rule always has been open to serious question. It has been established on the theory that in contested probate there is neither in the legatee group, nor in the heir group opposed, any privity, joint interest or interest by succession to the declarant whose admissions against interest of all the group are being offered, that would justify the inference that the declarant was able to " give away " the individual share of any other in the group. Obviously, where the declarant is the sole party in interest, there is no " group." The will is rightly said to stand or fall as to all alike, except in the rare case where the attack is focussed on some part of it only.

Counsel on either side, who are more skilled in trial practice than versed in mere abstract law, draw just the opposite conclusion. To them it is evident in such situations when one of the proponent group, for example, is about to be shown, by his own admissions, to have procured the will by fraud or undue influence, that then the attempt of any other in his group, by objection under the rule in question, to stifle testimony of a confession by the wrongdoer, is necessarily directed to prevent the ill-gotten goods from being taken from the whole group by the one decree that will be binding on all alike; and that the objection is based on the common desire of all of the legatee group to share in the ill-gotten goods. Absentees are not " innocent," because they stand to share. This seems to be sufficient privity, arising out of the conceded fact that ordinarily the will must stand or fall as a unit, and that all in either group win or lose together.

However, any relief, apparently, must now be sought from the Legislature. The only pertinency of what has been said is to point out that these contestants having had a very distinct and material advantage before the jury to the extent that the established rule was not invoked against them, have presumably put before the jury a more favorable case than they could hope to have been legally allowed to present, and are not now in any position to urge that the verdict was against the evidence or the greater weight thereof, or that injustice has been done. Had the rule been seasonably invoked, a directed verdict for the will would probably have been the result.

The motion for a new trial is denied, and the matter restored to the adjourned calendar of May 9, 1940, to settle the form of the order on this motion and the decree admitting the will on the ver· dict, and for such other matters as may then be properly in order.

Enter an order in accord with this decision.