In the Matter of the Estate of GEORGE BEBAN, Deceased.

Surrogate's Court, New York County, August 14, 1929.

*Robert Emmet Connolley,* for Mary Beban Smith.

*Dean, King & Smith* [*Frederick P. King* of counsel], for the petitioner.

*John J. Cray,* special guardian.

O'BRIEN, S. The testator died at Los Angeles, Cal., on October 5, 1928. His will was admitted to probate by the Superior Court of the State of California, for the county of Los Angeles, on the *26th day of October, 1928.* Letters testamentary were issued to Mary Beban Smith, one of the executors and trustees named in his will, on November 7, 1928. She was also appointed on October 10, 1928, by the California court, general guardian of George Beban, Jr., testator's only next of kin and heir at law, an infant of the age of fourteen years. On *October 19, 1928,* a petition for the probate of the testator's will in this court was filed by the Lawyers' Trust Company, also named in the will as executor and trustee, and a citation returnable *November 17, 1928,* was issued to all persons interested. Prior to the return date of this citation, to wit, on November 15, 1928, Mary Beban Smith filed a petition for ancillary letters upon the will of the testator probated in California. She filed objections to the probate of the testator's will in this court on the ground that it had already been probated in the California court, which court found as a fact that testator was domiciled in California at the time of his death. The answer of the Lawyers' Trust Company to the petition for ancillary letters testamentary questions the good faith of her application for probate in the Superior Court of California. The two proceedings were by order consolidated into one, and thereafter numerous hearings were had before the surrogate upon the questions presented. The Lawyers' Trust Company, a New York corporation, and Mary Beban Smith, who is a cousin of the testator, were named as executors and trustees. The latter was also named as testamentary guardian of George Beban, Jr.

The will directs the setting up of a trust measured by the lives of Mary Beban Smith and her husband, Matt Smith, of a sum sufficient to provide an income of $500 per month to be paid to Mary Beban Smith and Matt Smith so long as they shall maintain a home for George Beban, Jr., and William J. McBride, father-in-law of the testator, with ultimate remainder to George Beban, Jr., absolutely. Various other bequests and legacies are bequeathed by the will. The testator's residuary estate is directed to be held in trust for his son, George Beban, Jr., *with income from $300 to $500 per month to be applied to the maintenance and education of his son until he attains the age of twenty-five years.* Upon attaining

such age George Beban, Jr., is to receive one-fourth of the principal of the trust fund, and the balance when he arrives at the age of thirty. In the event of the death of George Beban, Jr., before the termination of the trust, the principal is to be· divided equally between Mary Beban Smith and the testator's two brothers. Under the terms of the will George Beban, Jr., is named as executor and trustee when he arrives at the age of twenty-one years.

With respect to the probate of the testator's will in California, it appears that within three days after his death his original will was offered for probate by his cousin, Mary Beban Smith. She also filed a petition in the Superior Court of California for her appointment as sole guardian of George Beban, Jr., and for her appointment as special administratrix of the estate. It is conceded that under the law of California a foreign trust company may not act. as executor and trustee in that State. Nevertheless, the Lawyers' Trust Company, on learning of the death of the testator, advised their California representatives to offer their services to Mrs. Smith. Such services were refused by her. She personally did not advise the Lawyers' Trust Company of the proceedings in the California courts. The petition of Mrs. Smith for probate alleged that the testator was a resident of Los Angeles, in the State of California. While it is true that the petition for probate mentioned the fact that she resided at 210 West One Hundred and First street, New York city, and that the minor resided at that address, she did state at the top of the petition that she was a resident of Los Angeles. She concededly was then and is now a resident of New York city, N. Y. Whether or not this court shall assume jurisdiction and admit the will to probate in this county, depends (1) upon the good faith of the proceedings in the California court, and (2) upon the determination as to the actual domicile of the testator at the time of his death.

1. Thus we are required to make particular inquiry into the proceedings of the California court which found that testator's residence was in the county of Los Angeles, Cal.

Whatever jurisdiction in the first instance was obtained by reason of the fact that decedent died there, leaving real and personal property within that State, the county and State of New York could not thereby be ousted of its jurisdiction, if it be determined that testator was domiciled in New York. The question of domicile was inquired into by the California court *upon the allegation of the petitioner that testator died a resident of California.* The Lawyers' Trust Company, being a foreign corporation, could not appear upon such a hearing, but representatives of the trust company in Los Angeles appeared as *amici curiæ* and were heard. They

requested that any adjudication as to residence should be postponed until a thorough investigation could be had. A postponement of the hearing was nevertheless denied. The record with respect to such application for adjournment is significant as showing the great haste with which the proceeding was conducted, viz.:

" Mr. S osson (as *amicus curiæ*): Here is the situation we have here. The persons interested in the trust is a trust company in New York City with the co-execu⁺rix, being in New York. It is difficult to determine all these questions. To me it would be very proper to continue this matter for further hearing until proper investigations can be made in New York. We can examine this income tax return. It certainly would not impose any hardship on the estate. In the meantime, the New York Court —

" The Court (interposing): Do you think you can arrange with the courts of New York to postpone any application on the question of probate until after this court has made the decision?

" Mr. Slosson: I don't know.

" The Court: *I would not care to give you an opportunity to undertake it. While we were deciding that the New York courts might take jurisdiction. That would conclude the matter. I would not care to continue it. I want to close it right now just as soon as we can.*" (Italics mine.)

There was, therefore, no opportunity for a full inquiry into the fact of domicile of the testator in California. The court issued a " certificate of proof of will and facts found " in part as follows: " That said George Beban died on or about the fifth day of October, 1928, in the County of Los Angeles, State of California, that at the time of his death he was a resident of the County of Los Angeles, State of California, *that the said annexed will was duly executed by the said decedent in his lifetime, in the County of Los Angeles, State of California* (italics mine) and signed by the said testator in the presence of Carroll E. Blessing, William J. Smith and Everett Ryder, the subscribing witnesses thereto." An order to that effect was entered.

The haste with which this proceeding was consummated in the California court is again apparent from the finding of fact that the will " was duly executed by the said testator in his lifetime, in the County of Los Angeles, California," whereas, it is undisputed that the will was executed in the county of New York. *It also appears that no special guardian was appointed for the infant, George Beban, Jr., in any of the proceedings in California.* Our courts are solicitous in every case where infants' rights are involved to protect such interests by the appointment of a special guardian as a wholly disinterested person in the estate.

It is quite evident from the reading of the will of the testator that the principal object of his bounty was his infant son.   Adequate provisions appear to have been made by the testator for his maintenance.   Mary Beban Smith, upon one hour's notice, in three public places in the county of Los Angeles — a further evidence of haste, although presumably in conformity with the California statutes — had herself appointed special administratrix pending the probate of the will, for the purpose of obtaining an immediate allowance for the maintenance and support of the infant.   On October 15, 1928, upon her application both as guardian and special administratrix, payment of $665 for the tuition of the infant was authorized, and also $100 for his support and maintenance. This was followed by a further order two weeks later increasing the allowance for the maintenance of the infant from $100 a month to $1,000 a month, commencing on the date of the death of the testator.   Yet the will specifically prescribes that a " sum of not less than $300 and not more than $500 a month during his minority " shall be applied for his support and maintenance.   The good faith of Mary Beban Smith is attacked as to these measures taken by her.   These orders were in effect *ex parte* orders.   Great harm will come in the administration of the law if jurisdiction and control of decedents' estates are to be made dependent upon the speed with which court proceedings are conducted.   While ordinarily full faith and credit will be given the proceedings of a foreign court, *the rule of comity will not be followed when it makes effectual an attempt to frustrate the carefully considered provisions of a will.*   Mrs. Smith's action in probating the will in the State of California, and her attempt to prevent its admission to probate here, thus placing the entire administration of the estate in her hands as sole executrix, are in direct contravention of the wishes of the testator as expressed in his will.   In *Matter of Harriman* (124 Misc. 320; affd., on opinion of FOLEY, S., 217 App. Div. 733) the will of the testator, which had been probated in New York, contained a power of appointment.   The power was exercised by the will of the donee of the power, who died in California.   The California courts denied probate to the will of the donee on the ground that she had been unduly influenced in making it.   In an accounting proceeding in this court it was contended by the children of the donee of the power that full faith and credit should be given to the decree of the California court which denied probate of the will of the donee.   The special guardian appointed by the New York court for certain infant remaindermen who would benefit by the execution of the power, claimed that the power was validly exercised and that the courts of New York State had exclusive

jurisdiction to determine the validity and effect of the instrument of appointment; that they, the grandchildren, were not mentioned in the petition for probate of the will o the donee in the California court, were never served in the proceedings, and their interests were not protected by a special guardian or a guardian *ad litem*. Surrogate FOLEY, overruling the contention of the children of the donee of the power, held that under the circumstances of the estate the decrees of California were without legal effect on the courts of this State, and that the decrees of the California courts were not entitled to full faith and credit in this State under the Federal Constitution. In his opinion he clearly defined the attitude of our courts with respect to court proceedings which in effect defeat the purposes of the makers of wills, as follows: " The courts of our State have vigorously protected trust estates and have resisted any attempt, either by collusion or other acts, to defeat the will of a testator, or to al'ow improvident beneficiaries to obtain their estates outright. Particularly has this rule been enforced where the rights of infant remaindermen were created under the terms of the will. (*Matter of Wentworth*, 230 N. Y. 176; *Metcalfe* v. *Union Trust Co.*, 181 id. 39.) " Surrogate FOLEY summarized the rules of law to be applied in that case as follows: " Where no question is raised by any party as to the legality of the rejection or admission of the donee's will to probate, our courts, as a matter of comity or discretion, may accept the decree of the foreign State, if the requirements of our State are established. But where, as in this case, the rights of infants are prejudiced, or where substantial objections are raised to the regularity of the procedure in the foreign State, *our courts must enforce their exclusive jurisdiction over the donor's estate and inquire into the validity of the donee's will in an original proceeding here.* Only by such safeguards may the beneficiaries be protected against a collusive or fraudulent proceeding in a foreign State by which the intentions of a New York testator, or of his appointor, may be wholly frustrated." This decision is applicable to the present situation, at least to the extent of the failure to protect the rights of the minor and the frustrating of testator's purpose to have the trust company as coexecutor and cotrustee.

The hurried offering of the will for probate in a State where her coexecutor and cotrustee was without power to act in such capacities and unable to appear and contest the claim of a California domicile, the instigation of an inquiry into the question of domicile in the California court where such a declaration was not necessary to give the California court jurisdiction, the ignoring of the coexecutor and cotrustee altogether in the California court proceedings, the

securing of letters of guardianship over testator's son, coupled with the failure to have a guardian *ad litem* or special guardian appointed so that a disinterested and independent protection of the minor's interests might be had, the application for ancillary letters in this court without joining the trust company in the petition, all of these facts do not spell " good faith."

2. Taking up the question of domicile, it may be stated at the outset that this court has jurisdiction of a proceeding for the independent probate of a will of a testator living in a foreign State where he dies possessed of real or personal property in this county. (*Matter of Froment,* 135 Misc. 483.) In the case of *a non-resident decedent,* where the courts of the foreign State have already probated his will, as a matter of comity original probate here will be denied. Thus, in *Matter of Leonori* (130 Misc. 499), Surrogate FOLEY in denying probate to a will of a non-resident, stated: " While we may, in certain cases, permit original probate of the will of a non-resident in this State, where the basis of our jurisdiction exists, no reason for such procedure exists where the courts of the domicile have already assumed jurisdiction of the estate." Surrogate FOLEY's decision in that case did not involve a situation such as is presented in the instant case. Could it be assumed that testator's purpose and plan to have a trust company act with the individual executor and trustee were not actually frustrated, and that all the issues involved in the probate proceeding in California were adequately tried out and determined, and further, that the minor was represented by a special guardian, the rule of comity might be applied, provided that testator was domiciled in California. But our problem is different, not only for the reasons already expressed, but for the further reason that on the proofs presented I am convinced that when decedent died he was domiciled in New York. His last will was executed in New York city on January 18, 1928, not quite ten months prior to his death. In his will he described himself as being " of the City and State of New York." The 1st paragraph thereof reads as follows:

" *First.* I declare that I am a widower and I have one son, whose name is George Beban, Jr., and I declare that I have no other issue of my body, and I have no children by adoption and *I further declare that my domicile and place of business is the City and State of New York, although because of business reasons, or otherwise, I am from time to time and have in the past sojourned without the State of New York.*" (Italics mine.)

*About a year prior to the execution of his last will he made and executed another will in California, dated November 9, 1927. After reciting that he was " of the City of New York, in the State of New*

*York, but presently and only temporarily of Los Angeles, Cal.,"* he declared in paragraph 3 as follows: *" I declare that my domicile and place of residence is in the said City of New York in the said State of New York."* In that will, as in his last will probated in California, the Lawyers' Title and Trust Company, the predecessor of the Lawyers' Trust Company, was also nominated as executor and trustee, together with testator's cousin, Mary Beban Smith. These formal declarations in instruments of a sacred character, together with other testimony as to domicile of the testator in New York, carry great weight in arriving at a determination of domicile in this county.

It appears that, although born in California, the career of the testator had its first beginning in this city thirty years ago. He was an actor; his wife was an actress. Considerable part of their time was spent " on the road." The testator's first appearances were in juvenile parts in California, but at the age of twenty or earlier he left San Francisco. More than twenty-five years ago he appeared in New York with the old Weber and Fields company. During the last ten years of his life his profession was that of an actor and producer of moving pictures. He was married twice. His first marriage occurred in New York city. About sixteen or seventeen years prior to his death he married his second wife, Miss Edith MacBride, at Riverside, Cal., while " en tour." Miss MacBride resided with her parents, Mr. and Mrs. William J. MacBride, at New York city. The first home of the testator and his wife was at the Wentworth Hotel on Forty-sixth street, New York city. About that time the testator purchased premises at Long Beach, N. Y. The documents in connection with such purchase, dated September 28, 1911, recited his address as in the city of New York. In 1914 George Beban, Jr., was born at New York city. There is evidence that the testator and his wife occupied a housekeeping apartment on Seventy-second street, near Columbus avenue in New York city, in 1916 and 1917. There is also evidence that the testator purchased a dwelling house on Lanewood avenue, in Los Angeles, Cal., in 1918, with the intention of bringing his family together there when he became interested in moving picture work. It seems, however, that due to the climate of California, which did not agree with Mrs. MacBride, the mother-in-law of the testator, the family of the decedent returned to New York after a period of six months. *For some years prior to the testator's death this house on Lanewood avenue had been rented.* During the years 1920–1922 the testator lived, together with his wife, at the Astor Hotel in New York city. Thereafter they resided at the Broadway View Apartments at One Hundred

and Fourth street and Broadway, New York city. Subsequently Mrs. Beban left the Broadway View Apartments and took up a residence in the Carlton Terrace Hotel, at One Hundredth street and Broadway, New York city, where she maintained a suite of rooms. Meanwhile testator was constantly traveling, except during summer vacations, which it was his practice to spend in California. George Beban, Jr., was left in the care of his grandparents, Mr. and Mrs. William MacBride, during most of the time that his parents were traveling in their professional engagements. Mrs. Beban died at the Fifth Avenue Hospital, New York city, on December 10, 1926. For five or six years prior to his mother's death, and from the time that he was old enough to go to school, George Beban, Jr., attended school in New York city, first at the Riverside School at One Hundred and First street and West End avenue, and later at the Berkeley School on Eighty-third street, New York city. After the death of Mrs. Beban the care of the child was placed in the hands of Mrs. Mary Beban Smith. Just prior to the death of Mrs. Beban, on November 22, 1926, testator rented an apartment at 210 West One Hundred and First street, New York city, for the purpose of having Mary Beban Smith, her husband, Matt Smith, Mr. and Mrs. William J. MacBride and George Beban, Jr., live there together. The lease of the apartment was signed by the testator as tenant for a term beginning December 15, 1926, and ending September 30, 1928. *Prior to his death the testator renewed the lease for a further term, beginning October 1, 1928, and ending September 30, 1930.* For the maintenance of this apartment he allowed the sum of $400 a month. Mrs. Smith testified that he intended this apartment for a permanent residence for his son, George Beban, Jr., and Mr. MacBride. The apartment is still occupied by the persons named, except that George Beban, Jr., is now a student in Blair Academy at Blairstown, N. J. It appears that it was planned by testator that his son should be educated here, although there is testimony that the testator desired his son to attend a college in California which had not yet been built.

It thus appears that most of his married life was spent here, his family lived here and his son's education was arranged for here. He had made his investments under the guidance of an officer of the Lawyers' Title and Guarantee Company for a great many years. Most of them were in guaranteed mortgages and mortgage certificates procured through the instrumentality of a Mr. Blessing, an officer of the said company, in whom the testator had great confidence. Out of the close relationship with Mr. Blessing of this company, a strong bond developed, as was quite natural, between

testator and the company, under the tutelage of which his investments were being made. These salient facts clearly showing a definite establishment of a residence in New York are confirmed by the declarations and provisions in the California will and the New York will. The evidence on the question of domicile, however, is not one-sided. Testimony was presented showing the length of time he had latterly spent in California in the production of movies, the building of a new home at Palisades Del Ray, the investment of moneys in California mortgages, conversations with friends and intimates as to his plans and purposes. It is significant, on the other hand, that he contemplated the purchase of the home prior to and during his last visit to New York and prior to the execution of his last will, wherein he so emphatically alleged his domicile to be in New York. It was not until his return to California that he actually purchased it. Considerable correspondence between decedent and his cousin, Mary Beban Smith, with reference to this house and its furnishings indicates that he intended it as a home, but this evidence is not sufficient to offset the evidence in favor of the fact of a New York domicile, nor does it offer a basis for a definite conclusion that he intended the house as a permanent residence. When all the proofs are analyzed and weighed, the weight of evidence is strongly with the petitioner trust company, and I hold that testator was in fact domiciled in the county and State of New York. (*Dupuy* v. *Wurtz*, 53 N. Y. 556.)

The contention on behalf of Mrs. Smith that the proceeding for the probate of the will here should be dismissed because the original will is on file in the California court whence it cannot be removed for production here, must be overruled. Under section 141 of the Surrogate's Court Act (as amd. by Laws of 1925, chap. 575), "where the will is on file in a court or public office, of another State of the United States, or in a court, or public office, of a foreign country, and under the laws of such State or country, the will cannot be removed, the surrogate may issue a commission to take the testimony in the matter * * *." Thus the surrogate has ample authority to take proof by commission of the necessary testimony to establish the validity and due execution of a will where it is filed in a foreign jurisdiction. During the trial the attorneys for the trust company made certain objections to testimony taken by deposition in behalf of Mrs. Smith and decision was reserved. I have overruled all of said objections.

For the reasons herein stated and in accordance with my rulings, I hold that the petition for ancillary letters testamentary should be denied and the petition for probate of the last will of testator will be entertained. Proceed accordingly.