In the Matter of the Estate of KATHARYN O. CORNELL, Deceased.

HERMAN D. CORNELL, Appellant; WILLIAM T. ALFORD, as Administrator of the Estate of KATHARYN O. CORNELL, Deceased, et al., Respondents.

(Argued April 30, 1935; decided May 21, 1935.)

*Frederick C. Bangs* for appellant.

*W. Morton Carden* for respondents.

FINCH, J. William T. Alford, as domiciliary administrator of the estate of Katharyn Oglesby Cornell by appointment of the Probate Court of Jackson county, Missouri, was denied a motion by a decree of the Surrogate's Court of New York county, in which motion the State of Missouri intervened " for the purpose of protecting the inheritance tax due the state," to have set down for trial in New York the issue of whether decedent died domiciled in the State of Missouri (on the ground that the decedent died intestate a resident of that State), or in the State of California (where the will of decedent was

probated and letters testamentary issued to appellant Cornell, on the ground that decedent died a resident of that State leaving a valid will). There is no contention that the decedent ever resided within the State of New York, and New York State is making no claim to prior right of administration or to taxes. Decedent left about $65,000 in the State of New York.

The Appellate Division, two justices dissenting, reversed this decree and remitted the matter for a hearing by the Surrogate so " that recognition must be accorded to whichever decree is entitled to be recognized, as disclosed by the facts on which its validity depends." (242 App. Div. 562, 565.)

Decedent died June 4, 1933, in Kansas City, Missouri. She had been judicially separated from her husband, who continued to reside in California. Decedent left a will. This will was executed in the State of Oklahoma. Immediately following her death the Public Administrator, acting for the State of Missouri in the territory comprising Kansas City, procured letters of administration to be issued to him and shortly thereafter presented an application to the Surrogate's Court, New York county, upon which ancillary letters of administration were issued to him. He thereupon demanded possession of such property of decedent as was in the custody of a banking institution in New York county. Upon being advised of this demand, the executor named in the will of decedent, who had in the meantime initiated probate proceedings in the State of California, applied to the Surrogate's Court of New York county for an order suspending the powers of the ancillary administrator. This suspension was granted, pending completion of the probate proceedings in the State of California. These proceedings resulted in the due probate of the will. Following such probate, the executor filed in the Surrogate's Court an authenticated copy of the will, the decree admitting it to probate and letters testamentary. He thereupon procured a decree which terminated the powers of the ancillary

administrator and directed the issuance of ancillary letters testamentary to him as executor. The ancillary administrator then applied to the Surrogate's Court to vacate the decree granting ancillary letters testamentary. Upon that application the State of Missouri, through the Attorney-General of the State, procured leave to intervene and joined in the application. The sole issue raised by the papers in the Surrogate's Court was one of actual domicile or residence of decedent at the time of her death. There is no attack made upon the will of decedent as an effective will. The Surrogate's Court held that, in view of the lack of denial that decedent left a will appointing an executor, the Public Administrator acting for the State of Missouri was no longer an interested party in this jurisdiction and that, so far as the State of Missouri was concerned, though the Surrogate's Court had the power to make the inquiry, nevertheless, in the interest of comity between States and of the proper administration of the assets under the circumstances disclosed in this record, the State of New York should remain indifferent and decline to exercise jurisdiction. As already noted, the Appellate Division, with two dissents, reversed that decision and directed the trial of the issue.

Upon this record, the State of New York may, in its discretion, decline to make the inquiry and remit the local assets to the foreign executor, to be dealt with by him as the courts of his jurisdiction decide. The party seeking the inquiry may apply in the State in which the original probate was granted and there obtain if warranted the relief which is sought here. New York State has no interest in the issue, either because of a claim for taxes or to prior right of administration or otherwise, no contention being made that the decedent died domiciled or was ever domiciled in this State.

That the Surrogate's Court of New York county has jurisdiction over the New York estate of this non-resident decedent admits of no doubt. The issue is whether the Surrogate's Court in the case of a decedent who con-

cededly is not a resident of this State, must conduct an inquiry into the actual residence of decedent, to determine whether or not a court of another State had jurisdiction to admit the will to probate. Although the decree of the State of original probate is not conclusive on the question of domicile or residence (*Taylor* v. *Syme*, 162 N. Y. 513; *Baldwin* v. *Rice*, 183 N. Y. 55; *Matter of Connell*, 221 N. Y. 190), the Surrogate's Court of New York county, in issuing ancillary letters testamentary (Surr. Ct. Act, § 159) may rely on the decree of another State as presumptively establishing residence there. Moreover, in the case at bar we have an additional fact, negativing the exercise of jurisdiction, in that the request is made by a domiciliary administrator who has no interest in the estate if, in fact, the decedent disposed of her property by will.

Every person interested in the property of decedent in this State, except a legatee who was given $1,000 under the will, is a non-resident of the State of New York. All witnesses who can testify on the issue of domicile apparently are non-residents of this State. There are no creditors here. The executor does not reside here, nor does the alleged administrator. No reason appears why the trial should be here, except that the non-resident respondents for some reason not made known prefer not to try out the issue in another jurisdiction.

It appears that this decedent maintained with her husband a residence in California and only left that State after the judicial separation. Hence, the California domicile would continue unless decedent had acquired a new domicile in the State of Missouri.

The trial of the issue of domicile in New York will be binding only in the State of New York. (*Overby* v. *Gordon*, 177 U. S. 214; *Thormann* v. *Frame*, 176 U. S. 350.) (See *Wedemann* v. *U. S. Trust Co.*, 258 N. Y. 315, at p. 320; *Helme* v. *Buckelew*, 229 N. Y. 363.)

Moreover, the determination of this issue of domicile will leave untouched the question whether or not this

non-resident decedent disposed of her property by will. Respondent does not contest the validity of this will. In consequence, respondent has no interest whatever in the property, because the title vested in the executor named in the will as of the instant of death. He derived his title and his rights from the will itself, not from the decree of any court. (*Matter of Shonts*, 109 Misc. Rep. 276; affd., 229 N. Y. 374.) In fact, it appears that the domiciliary administrator has called on this executor to offer for probate this will in the Probate Court of Jackson county, Missouri.

Whether the New York assets of this non-resident estate are administered by the executor under the ancillary letters testamentary, which are at present issued and outstanding, or under original letters testamentary, which this executor will be entitled to in case decedent left a valid will not probated elsewhere (Surr. Ct. Act, § 45; *Matter of Connell*, 221 N. Y. 190), is not very important to this estate or to those interested in it. What is of great importance, however, both to this estate and to its beneficiaries, is to avoid having the assets in New York dissipated by the expense of futile investigations and trials and by the payment of commissions and fees incurred therein.

Furthermore, if the Surrogate's Court of New York county does not rely on the decree of another State as presumptively establishing the residence there, or at least establishing the fact that decedent left a valid will, why could not every other State likewise disregard comity and compel those interested in an estate where the will has been validly probated here to journey to a foreign State and there defend a contest of the validity of the probate here, with no certain result except the dissipation of assets in fees and commissions?

Respondent urges that the provisions of the Surrogate's Court Act (§§ 159 and 160) make it mandatory upon the Surrogate's Court here to have a trial of this issue. These

sections, however, only make it mandatory upon the Surrogate's Court to issue ancillary letters in due course, and do not touch the question as to whether the Surrogate's Court should be required to have a trial or, in its discretion, refuse such inquiry in the circumstances set forth in this record.

It follows, therefore, that in the estate of a deceased person who concededly was not a resident of this State and concerning whose estate this State makes no claim of prior right of administration, our courts are not required to conduct an inquiry into the question of domicile of decedent and establish whether or not a sister State had jurisdiction to admit the will to probate. Especially is this so when the Surrogate's Court of New York county is requested to make the inquiry solely by a foreign administrator who has no interest which the courts of this State are required to recognize. In such case, the courts of New York State have the discretion to decline to make the inquiry.

It follows that the order of the Appellate Division should be reversed and the decree of the Surrogate's Court affirmed, with costs to the appellant in all courts.

The second and third questions certified should be answered in the negative. We deem it unnecessary to answer the first question.

CRANE, Ch. J. (concurring). Surrogate's Court Act, section 159, provides for ancillary letters upon foreign probate. Where a will of personal property made by a person who resided without the State at the time of the execution thereof, or at the time of his death, has been admitted to probate within the State where it was executed, or where the testator resided at the time of his death, the Surrogate's Court having jurisdiction of the estate must, upon an application, accompanied by a copy of the will, and of the foreign letters, issue thereupon ancillary letters testamentary.

The petition must set forth the names and residences of the creditors within the State and, upon the return of the citation, the Surrogate must ascertain, as nearly as he can do so, the amount of the debts due from the decedent to the residents of the State. Before ancillary letters are issued, the person to whom they are awarded must qualify, as prescribed for the qualification of an administrator, except that the penalty of the bond need not exceed twice the amount which appears to be due to residents of the State. The Surrogate, by section 164, may give full directions regarding money or other personal property received by the person appointed; and, by section 165, he may even require the person to whom ancillary letters are issued to pay the creditors here in full or *pro rata*. In other words, the only interest which the State of New York has in issuing ancillary letters testamentary is to protect our own creditors or the State tax. Beyond this, the executor will account for the assets in the place of his domicile.

Katharyn Oglesby Cornell died in Kansas City, Missouri, on June 4, 1933, leaving personal property in New York county consisting of stocks, bonds and cash in bank, having the approximate value of $65,000. She left a will appointing her former husband, from whom she had been divorced, Herman D. Cornell, executor. This will has been probated in the county of Los Angeles, California, and letters testamentary have been issued to the executor named. He has applied here, pursuant to the above sections of the Surrogate's Court Act, for ancillary letters testamentary, and they were issued to him by the Surrogate of New York county on July 31, 1933.

As Mrs. Cornell died in Kansas City, and was a resident there for a time, the Public Administrator of that place, William T. Alford, obtained letters of administration of her estate, although it does not appear that she had property there of any particular value. He has applied

here for ancillary letters of administration so that the assets may be turned over to him as Public Administrator, out of which inheritance taxes may be paid to the State of Missouri. His immediate application, and the one before us, is to revoke the letters granted to Cornell, executor, and to require the Surrogate of New York county to try the issue presented by the affidavits regarding the domicile or residence of the testatrix at the time of her death. The Surrogate denied the application; the Appellate Division has reversed, not as a matter of discretion, but on the theory that the Surrogate had no discretion, but was required by the statute to conduct such a hearing and determine jurisdiction of the respective States.

We do not think any such duty rested upon the courts of this State. That Mrs. Cornell left a will, in which Mr. Cornell was made executor, is not denied; the fact appears to be admitted. Under no circumstances, therefore, is there an occasion for the Public Administrator of the State of Missouri to function. He has no interest so long as the will exists and has been duly probated. It may be that Mrs. Cornell was domiciled in Missouri, and that California had no jurisdiction to admit her will to probate. This is a matter to be settled between the courts of these two States, in which the State of New York is not at all interested.

Any decision made by the Surrogate of New York county regarding the domicile would not be binding upon any of the parties interested in this estate or upon Missouri or California. So far as we here are concerned, it is a useless proceeding, taking money out of the assets here which might better go to the creditors or beneficiaries. It leads nowhere except as it may possibly satisfy the feelings of a conscientious Surrogate in ordering a disposition. As before stated, this is now entirely in his hands. He can control the assets here and protect them in any way he sees fit and as he has done, by requiring a bond more than sufficient to protect their proper disposition. (*Aspden* v. *Nixon*, 4 How. [U. S.] 467; *Wilkins*

v. *Ellett*, 9 Wall. [U. S.] 740; 108 U. S. 256–259; *Iowa* v. *Slimmer*, 248 U. S. 115; Harvard Law Review, vol. XLVIII, No. 6, p. 911, " The Administration of Intangibles.")

This is discretionary with the Surrogate whether he shall entertain any such proceeding. The Appellate Division has not reversed this discretion, but has held that he had no discretion, and in this we think it was wrong.

In actions between non-residents founded on tort, where the cause of action arose outside this State, our courts may refuse to assume jurisdiction. (*Gregonis* v. *Philadelphia & Reading Coal & Iron Co.*, 235 N. Y. 152, 160; *Murnan* v. *Wabash Ry. Co.*, 246 N. Y. 244.) In *Wedemann* v. *United States Trust Co.* (258 N. Y. 315, 319) this court said: " An important function of ancillary administration is the application of decedent's local property to the payment of his debts but no less important, under some circumstances, is the duty to transmit assets to the domicile. There is a strong implication in section 165 of the statute that priority in the discharge of debts which are due to residents of this State is intended. We have held that the Surrogate possesses a discretionary right under that section to refuse to pass upon all claims whether of residents or non-residents. (*Matter of Meyer*, 244 N. Y. 598.) That is the law when an ancillary executor has been named in this State. In the case of an ancillary administrator, certainly the Surrogate's power to refuse would not be diminished."

The Surrogate of New York county was, therefore, not obliged as matter of law, on the application of the Public Administrator of Jackson county, Missouri, to hold a hearing and determine after a trial whether the will of Katharyn Oglesby Cornell was properly admitted to probate in the State of California, or, in other words, determine whether she was domiciled in Missouri or California.

The order of the Appellate Division, as before stated, reversed the Surrogate as matter of law. For the reasons which we have stated we are of the opinion that the Surrogate was justified in exercising his discretion in this matter. The order of the Appellate Division should be reversed, and that of the Surrogate affirmed. The second and third questions certified should be answered in the negative, making it unnecessary to answer the first question.

LEHMAN, J. (dissenting). The Surrogate's Court has granted ancillary letters upon a will made without the State by a person who resided without the State. Such letters may be granted where the will has been " admitted to probate within the State or the territory of the United States, where it was executed, or where the testator resided at the time of [her] death." (Surr. Ct. Act, § 159.) The will in this case was executed in Oklahoma and admitted to probate in the State of California upon a finding made *ex parte* that the testatrix resided there. In the State of Missouri, where the testatrix died and where she had lived after a judicial separation from her husband, letters of administration were issued *ex parte* to a Public Administrator. There may be a controversy between the State of California and the State of Missouri as to where the testatrix resided and as to which State will be entitled to tax the estate. The State of New York is not interested in that controversy. Perhaps our courts might refuse to take jurisdiction of that controversy. No such question is here presented. Here the Surrogate's Court has assumed jurisdiction to issue ancillary letters testamentary upon proof that the will was admitted to probate in California. The decree is challenged on the ground that the Surrogate's Court could not grant such ancillary letters upon a will probated in California without proof that the testatrix resided there. The statute provides in unmistakable terms that this must appear before such letters may be granted. That question has been decided

by the Surrogate's Court without a trial. The question before us is not whether the Surrogate's Court could refuse to take jurisdiction of a controversy, but whether it could take jurisdiction of an application for ancillary letters testamentary and, without a trial, decide a question of fact which forms the statutory foundation of such jurisdiction.

We have held that the grant of ancillary letters may be attacked collaterally unless the Surrogate acted within his statutory jurisdiction. Such jurisdiction is lacking where there is no proof that the foreign will was probated in the court of a State or country where the will was executed, or the testator resided. (*Taylor* v. *Syme,* 162 N. Y. 513; *Baldwin* v. *Rice,* 183 N. Y. 55; *Matter of Connell,* 221 N. Y. 190.) If a decree of the Surrogate's Court is subject to collateral attack on such grounds, then certainly the jurisdictional question may be contested in orderly fashion in the same court. It is conceded in the prevailing opinion that the decree of the State of original probate is not conclusive on the question of domicile or residence. Indeed, the court in Missouri has made other finding. Then it follows that the court assuming jurisdiction to issue ancillary letters testamentary must grant a hearing upon the contested question without which it has no jurisdiction. The order of the Appellate Division should be affirmed and the second certified question answered in the affirmative.

O'BRIEN, HUBBS and LOUGHRAN, JJ., concur with FINCH, J.; CRANE, Ch. J., concurs in opinion, in which O'BRIEN, HUBBS, LOUGHRAN and FINCH, JJ., also concur; LEHMAN, J., dissents in opinion, in which CROUCH, J., concurs.

Ordered accordingly.