In the Matter of the Estate of SARAH A. SMITH, Deceased.*

Surrogate's Court, Kings County   December 10, 1940

*Good & Kent* [*Robert J. Mahoney* of counsel], for Anna L. Mallon, petitioner.

* On reargument, see **175** Misc. 688.

*Copans & Kanon* [*D. Daniel Kanon* of counsel], for Alice Scruton, distributee, and for Mary G. Gray, distributee and contestant.

*Raphael V. Grottola,* for the St. Michael's Passionist Monastery, legatee.

*Alfred L. Marilley,* for the Female Institution of the Visitation, legatee.

*Edmond A. Knoeppel,* for The Servants of Relief for Incurable Cancer, legatee.

*Gray & Tomlin,* for the Roman Catholic Diocese of Brooklyn, New York, the Society for the Propagation of the Faith, the Home for the Aged of the Little Sisters of the Poor, the Nursing Sisters of the Sick Poor, the St. Marys Hospital of the City of Brooklyn, the Brooklyn Home for Blind, Crippled and Defective Children, and The Society of St. Vincent De Paul in the Diocese of Brooklyn, Long Island, New York, legatees.

*John J. Bennett, Jr., Attorney-General,* for the State of New York.

*Thomas J. Snee,* for William V. Elliott, public administrator of Kings county.

*Edward G. Elkins,* special guardian for unknown heirs and next of kin.

DODD, J., Acting Surrogate.  The essential issue here presented is as to whether a determination by a jury followed by a decree in a probate proceeding that a testatrix lacked testamentary capacity to make a will constitutes an estoppel in favor of a person who was not a party to the proceeding, against one who was, that the same testatrix a few moments later lacked the requisite mental capacity to revoke a prior will by canceling, tearing or obliterating.

In October, 1937, a will of this decedent which purported to have been executed on July 16, 1937, was propounded by Thomas W. Maires, Esq.  A contest ensued in which Mary G. Gray was one of the active opponents of the validity of the instrument. She interposed the usual omnibus broadside of objections.  After trial of the issues, the jury rendered a verdict which answered in the negative the framed issue of the testamentary capacity of the decedent, and in the affirmative that respecting the presence of undue influence in securing the execution of the document.  This verdict was embodied in a decree entered March 31, 1939, which has become final by failure to appeal therefrom.

A petition was subsequently presented by Anna W. Mallon, who was not a party to the prior proceeding, to probate a certain

alleged prior testamentary document purportedly executed by the same decedent and bearing date the 6th day of September 1928. Mary G. Gray has interposed objections to the probate of this instrument which, as limited by a preclusion order, allege, in substance, that on July 17, 1937, the decedent with intent to revoke the instrument, cut and tore her signature from the propounded instrument and thereby revoked it.

The document, as filed, shows the signature to have been excised. The scrap of paper on which it appears is attached to the lower part of the last page with a paper clip.

On the trial the proponent produced the subscribing witnesses to the instrument who supplied the customary testimony respecting its initial execution. She then introduced a witness who testified that he was a subscribing witness to the 1937 will, probate of which was denied, who stated that after the execution of the rejected will, the decedent cut her signature from the presently propounded instrument with the statement that she intended thereby to revoke it. On cross-examination, he testified that he had participated on a number of occasions in the execution and revocation of wills and that he was of the opinion that at the time of such occurrence the decedent was of sound mind and competent to make or revoke a will. The final witness called by the proponent was the attorney who drafted the rejected will who testified respecting transactions with the decedent on July 15 and 16, 1937, and expressed the opinion that she was of sound mind and possessed testamentary capacity. With this demonstration, the proponent rested.

The contestant then tendered testimony in support of her objections, but the proponent intervened with the assertion that she was precluded from so doing by the decree entered in the prior proceeding and that this rendered *res judicata* the fact that on the day on which the acts of alleged revocation took place the decedent did not possess testamentary capacity, and that it was accordingly established as a matter of law that no revocation occurred, since the same mental competency is required for such an act as is demanded for the execution of a valid will. (*Delafield* v. *Parish*, 25 N. Y. 9, 59, 60, 198; *Matter of Sharp*, 134 Misc. 405, 407; affd., 230 App. Div. 730; *Smith* v. *Wait*, 4 Barb. 28; *Matter of Waldron*, 19 Misc. 333; *Matter of Forman*, 54 Barb. 274; *Matter of Ascheim*, 75 Misc. 434; *Matter of McCabe*, 116 id. 637; *Matter of Quick*, 147 id. 28, 37.) The court thereupon suspended the trial to permit the parties to submit memoranda of law upon this issue of *res judicata*.

The chief legal reliance of the proponent is predicated on *Matter of Goldsticker* (192 N. Y. 35). In that case the issue concerned the

revocation of an earlier testamentary instrument by the provisions of a later one which had contained express language of revocation, and which had been rejected by reason of the lack of testamentary capacity of the testator. The parties were identical in both proceedings. It was held that the prior adjudication was *res judicata* respecting the ineffectiveness of the later instrument to effect the revocation of the earlier one.

This precedent is clearly distinguishable from the situation disclosed in the proceeding at bar. Section 34 of the Decedent Estate Law specifies two distinct and separate methods which are stated in disconnected clauses, by which a will which has initially come into valid existence may be revoked. The first is by a writing " Executed with the same formalities with which the will itself was required by law to be executed." This was the portion of the enactment which was applied in the *Goldsticker* case, the effect of the decision being only that where the issue of the existence of an instrument complying with this description had been litigated between two parties to a subsequent proceeding, and had been determined on the merits, it was not capable of subsequent relitigation between them. The previous litigation had been directed at the determination of a single ultimate issue only, namely, as to whether or not the document then propounded was a valid will within the requirements of section 21 of the Decedent Estate Law. The decision had been in the negative. All interested parties had received the opportunity of advancing their opposing contentions against each other, wherefore, as to all such parties in their further mutual litigations, the subject was foreclosed from further examination. As between them, no subsequent instrument within the description of section 34 of the Decedent Estate Law existed.

In the case at bar the issue is between Anna W. Mallon, who was not a party to the prior litigation, and Mary G. Gray, who was. Stated most favorably to the proponent, the question, in the absence of directly pertinent precedent, therefore, is whether she may assert an estoppel by judgment in respect of an incidental issue in the former proceeding, when she herself is unquestionably not bound thereby.

The statement of applicable principles which has been reiterated times without number is that " a judgment is conclusive in a second action only when the same question was at issue in a former suit and the subsequent action was between the same parties or their privies." (*Rudd* v. *Cornell*, 171 N. Y. 114, 127.)

It will be obvious from the quoted authoritative statement that two questions must inevitably arise whenever an assertion is made

that an issue is *res judicata,* or to employ the more accurately descriptive phrase, that an estoppel by judgment exists. These are, *first,* as to whether the issue had previously been determined within the connotation of the rule; and *second,* whether it constitutes an estoppel in favor of the person who asserts it.

Approaching an evaluation of the first question, it was for a time deemed to be the rule that any issue in a former litigation, even though merely incidental to the main purpose thereof, created an estoppel by judgment upon its determination. This broad doctrine was limited by the Court of Appeals in *Schuylkill Fuel Corp.* v. *Nieberg Realty Corp.* (250 N. Y. 304, 306), in the following statement: " A judgment in one action is conclusive in a later one not only as to any matters actually litigated therein, but also as to any that might have been so litigated, when the two causes of action have such a measure of identity that a different judgment in the second would destroy or impair rights or interests established by the first. * * * It is not conclusive, however to the same extent when the two causes of action are different, not in form only, * * * but in the rights and interests affected. The estoppel is limited in such circumstances to the point actually determined."

This limitation has repeatedly been reaffirmed and followed by the Court of Appeals. (*Wille* v. *Maier,* 256 N. Y. 465, 470, *Marine Transit Corp.* v. *Switzerland General Ins., Co.,* 263 id. 139, 147; *Sielcken-Schwarz* v. *American Factors, Ltd.,* 265 id. 239, 243. *Karameros* v. *Luther,* 279 id. 87, 91, 92.)

Applying this limitation to the facts of the present proceeding, it is observable that the former judgment did not establish any rights of any person whomsoever. It determined merely that the persons named in the propounded instrument, dated July 17, 1937, were not entitled to devolutionary rights pursuant to the terms of that document. It follows, therefore, that if the incidental issue of the testamentary capacity of the decedent on July 17, 1937, were decided differently in the present litigation it would not " destroy or impair rights or interests established by the first."

" The two causes of action are different, not in form only, * * * but in the rights and interests affected," since the former was to determine the validity of the document dated July 17, 1937, and the devolutionary rights of the persons named therein, whereas the present is to evaluate the effectiveness of the document dated September 6, 1928, and the resulting claims of the donees thereunder. It must follow, therefore, that in the present proceeding " the estoppel " of the former decree " is limited * * * to the

point actually determined," which was that the document of July 17, 1937, was not entitled to probate by reason of its failure to comply with the provisions of section 21 of the Decedent Estate Law.

The second question on the assertion of estoppel by reason of the former judgment, relates to the persons in favor of whom such an estoppel may be operative. As stated in *Rudd* v. *Cornell* (*supra*), this is only " between the same parties or their privies." This is merely an equivalent for the oft-repeated statement that to be effective, an estoppel by judgment must be mutual. (*St. John* v. *Fowler*, 229 N. Y. 270, 274; *Booth* v. *Powers*, 56 id. 22, 34.)

The meaning of this requirement is clarified in *Kessler* v. *Fligel* (240 App. Div. 232, 234; affd., 266 N. Y. 508) as follows: " In *Bigelow* v. *Old Dominion Copper Co.*, 225 U. S. 111, Mr. Justice LURTON said: ' what is privity? As used when dealing with the estoppel of a judgment, privity denotes mutual or successive relationship to the same right of property.' The defense does not allege that the defendant was a party to the equity action which terminated in favor of the corporation of which he was an officer. In our opinion he may not be said to have been in privity with the corporation, though actively engaged as its president and principal representative in prosecuting the equity action. Successive relationship to the same right was not present."

" It creates no privity between two parties that, as litigants in two different suits, they happen to be interested in proving or disproving the same facts." (*Sturbridge* v. *Franklin*, 160 Mass. 149; 35 N. E. 669; *Haverhill* v. *International R. Co.*, 217 App. Div. 521, 524; affd., 244 N. Y. 582.)

The proponent seeks to avoid the application of the usual prerequisite to an estoppel by judgment that it be equally binding upon both parties, or, to employ the usual phrase, that it be " mutual," by reference to *Good Health Dairy Products Corp.* v. *Emery* (275 N. Y. 14) and *Elder* v. *New York and Penn. Motor Express, Inc.* (259 App. Div. 380). Both of these cases related to the effect of determinations in suits against the drivers of automobiles for negligent operation, upon subsequent litigations by a plaintiff in the former suits against the owners thereof, predicated upon the same accident, it being the effect of the determinations in such cases, since the liability of the owner is predicated solely on the doctrine of *respondeat superior*, there is in substance a privity between the driver and the owner of the vehicle driven, which brings the situation within the spirit of that portion of the rule hereinbefore quoted. That the extension is not permissible where such close relationship does not exist is demonstrated by the deter-

minations in *Neenan* v. *Woodside Astoria Transp. Co., Inc.* (261 N. Y. 159) and *Haverhill* v. *International R. Co.* (217 App. Div. 521; affd., 244 N. Y. 582).

In the present situation there is no privity between the present proponent and the person who occupied that position in the former proceeding. The asserted rights which they, respectively, attempt and endeavored to validate were predicated on different instruments. Neither asserted a right which the other possessed or in which he was interested. The fundamental contentions are basically opposed and if it had not been determined that the assertions of the first were without merit, the different contentions of the present proponent would be utterly incapable of validation. There is consequently no semblance of privity between them, wherefore, even were the contention of *res judicata* otherwise sustainable, the fact that the present proponent was not a party or privy to the former proceeding would render it without legal basis.

It follows that the objection of the proponent to the introduction of testimony by the contestant on the subject of the mental capacity of the testatrix at the time of the alleged acts of revocation by tearing the present will, must be overruled and the proceeding will be set down for this purpose if the parties so desire.

Proceed in conformity herewith.