In the Matter of the Probate of the Will of GEORGE F. MORAN, Deceased.

Surrogate's Court, Kings County, February 9, 1943.

*Charles G. Coster* for Gertrude E. Moran, petitioner.

*Brown, Overend & Vogel* for Laura M. Croes, objectant.

*Charles P. Eschmann,* special guardian for Laura R. Moran.

McGAREY, S. The widow of the decedent seeks a decree (1) adjudging the decedent at the date of his death in Cuba a resident (domiciliary) of this county; (2) admitting to probate an instrument (referred to herein as the New York will) alleged to have been executed by him on January 3, 1936; and (3) annulling and revoking a holographic will (referred to herein as the Cuban will) executed by him in Cuba on December 17, 1938.

Objectant Laura Croes, a sister of decedent, moves to dismiss the proceeding on the grounds that (1) pursuant to Cuban law, the Cuban will was executed and protocolized by a Cuban court of general jurisdiction having jurisdiction *in rem* and *in personam;* (2) the fact of its establishment has been determined by this court, and (3) petitioner is estopped from questioning decedent's domicile or jurisdiction of the Cuban court by reason of (a) her appearance in the protocolization proceedings and (b) her subsequent acts and statements both in Cuba and in New York.

The special guardian for Laura R. Moran, an infant and only child of decedent, asserts that estoppel may not be invoked against his ward by reason of her mother's acts and statements and that neither the Cuban nor the ancillary proceedings are binding upon the infant.

The issues for determination are threefold, namely, (1) whether the Cuban decree protocolizing the will is conclusive upon the issue of domicile raised by the pleadings; (2) whether the petitioner is estopped from questioning domicile or jurisdiction of the Cuban court because of her appearance in the protocolization proceedings and her other acts and statements here and in Cuba, and (3) whether the Cuban and ancillary proceedings as well as the acts and statements of the petitioner are binding on the infant daughter.

The decedent, an American citizen, went to Cuba, in April, 1936, and obtained Cuban citizenship in July, 1936, which was later vacated for fraud by Cuban presidential decree in Febru-

ary, 1940. It is not denied that he remained there until his death on January 16, 1941, and was last visited by the petitioner in July, 1936. He left surviving the petitioner and the infant daughter as his nearest next of kin. The holographic will, executed in Cuba on December 12, 1938, disposed of his entire estate by giving one third to his wife (petitioner), one third to his child and one third to his sister (objectant). In the will, written in English, the decedent gave his residence as "* * * of 528-23rd, Vedado, Havana, Cuba. * * *" The decedent's residence is also recorded in the protocolization proceedings. However such recital of residence is not conclusive as to domicile. (*Mackenzie* v. *Mackenzie,* 3 Misc. 200; *Matter of Cleveland,* 28 Misc. 369; *Matter of Riley,* 86 Misc. 628.)

The decedent's death in Cuba leaving property there was sufficient under Cuban law, without more, to give the Cuban court jurisdiction to protocolize decedent's last will. Domicile of the decedent in Cuba was not a prerequisite to jurisdiction and the Cuban decree does not even presumptively determine that he was domiciled therein. Since the protocolization proceedings do not show that the question of domicile was then passed upon or even considered, the Cuban court's decree is only decisive of the fact of decedent's "death" in Cuba (*Matter of Gifford,* 279 N. Y. 470).

The Civil Code of Cuba provides that a holographic will is valid if written, signed and dated by a citizen or *foreigner* of age in his own handwriting (art. 688) and may be protocolized before the judge of testator's last domicile *or of the place where he died* within five years from date of death (art. 689). To protocolize the will, the genuineness of the instrument must be attested by three witnesses well acquainted with decedent's handwriting and signature or, in absence of competent witnesses, by handwriting experts appointed in the court's discretion (art. 691). When so proven, the will and the proceedings thereon are ordered to be protocolized, that is, copied in the records of a notary. The decision of the judge is carried out, notwithstanding objection, reserving to interested persons their rights to enforce their objections in a proper suit (arts. 691, 693).

The proceeding is *ex parte* and not a contentious one, and nonresident interested persons are not cited. The District Attorney is cited in their behalf but he is not required to appear. Where persons are required to be cited, they may be present at the observance of the proceedings and may make verbal observations only as to the authenticity of the will (art. 692). In the case at bar, the District Attorney was cited and did not appear.

The petitioner was not cited but appeared personally in her capacity as widow of decedent and ratified "all the acts at these proceedings."

In substance, the Cuban court does not determine the validity of the Cuban will beyond its genuineness. Neither the decedent's domicile nor his testamentary capacity and freedom from fraud or undue influence at the time of the execution of the will are requisite to its protocolization.

Where a court has jurisdiction of the subject matter and of the person, its decree is conclusive not only as to every material matter within the issues which were expressly litigated and determined but also as to those matters which, although not expressly determined, are comprehended and involved in the matter expressly decided, whether they were or were not actually litigated or considered. For the purpose of estoppel, whatever is necessarily implied in the judgment or decree is deemed to have been actually decided. (*Reich* v. *Cochran,* 151 N. Y. 122.) This general rule is understandable because a different decree in a later action or proceeding might destroy or impair the rights or interests established by the prior one. Where, however, the later action is different from the prior one not only in form but in the rights and interests affected, the estoppel is limited only to the point actually determined in the prior one. (*Schuylkill Fuel Corp.* v. *Nieberg Realty Corp.,* 250 N. Y. 304; *Dater* v. *Willson,* 36 Hun 546.)

Under these well-established principles, this court will not, nor is it required to, give the Cuban decree greater effect than given to it by the Cuban court and accordingly holds that the Cuban protocolization decree is not conclusive upon the issue of domicile and petitioner is not estopped from now questioning domicile by reason of her appearance at and ratification of the protocolization proceedings.

To hold otherwise would not only be contrary to our laws but also to Cuban law as it might deprive petitioner of her right to seek an annulment of the will (Civil Code, art. 693; Law of Civil Procedure, arts. 480-678) within fifteen years from date of its establishment (Civil Code, arts. 693, 1964) for the very grounds urged herein, viz., decedent's lack of testamentary capacity in the execution of the will and fraud and undue influence practiced upon him in the execution thereof. The Cuban Supreme Court has held that any person interested in the protocolization proceedings may sue to annul the will without being estopped by his conduct in connection with the former proceedings. (Jurisprudencia del Tribunal Supremo, vol. XIV, pp. 664, 691.)

Article I of the Laws of Cuba of May 31, 1928, gives jurisdiction to Cuban courts with respect to testamentary proceedings involving property of an alien in special cases, even though the alien was not a resident of Cuba, where *death* of the decedent occurred in Cuba leaving some property of the estate there. Under the Cuban Law of Civil Procedure such proceedings may be voluntary or necessary and are separate from the protocolization proceedings. They become necessary when any of the heirs are absent and have no legal representative or when any heir is a minor and is not represented by the parents (art. 1040). Furthermore, where no executor is designated by the will, the appointment of a judicial administrator also requires such proceedings (arts. 1068, 1096), which were conducted in Cuba for that purpose in the present estate.

Although their opinions are divergent, the experts on Cuban law agreed that there is no provision in the Cuban law which would estop the petitioner from demanding in the Cuban courts an annulment of the will because of her affirmative acts in having herself appointed as judicial administratrix in the testamentary proceedings, and that there are no court decisions on this question. To hold that petitioner is so estopped would be at variance with articles 693 and 1964 of the Cuban Civil Code, and thereby deprive her of rights granted by Cuban law. This court holds that the petitioner is not estopped from now questioning decedent's domicile by reason of her active participation in the proceedings resulting in her appointment as judicial administratrix.

Objectant urges that when this court decreed the filing of the exemplified copy of the Cuban will together with the record of the Cuban proceedings, it judicially determined that the Cuban will was duly probated or established in Cuba.

It is true that this court judicially determined that the Cuban will was established in Cuba, and properly so, for unquestionably the Cuban statutes (Civil Code, art. 688-693) setting forth the requirements for a valid holographic will and the procedure for its establishment were complied with. (*Matter of Gifford,* 279 N. Y. 470, *supra*; *Matter of Connell,* 221 N. Y. 190; *Matter of Harwood,* 104 Misc. 653, affd. *sub nom. Matter of Gay,* 188 App. Div. 918, affd. 227 N. Y. 607; *Matter of McCaffrey,* 188 App. Div. 772; *Matter of Warburg,* 129 Misc. 832.)

It is equally true that the practice of our courts is to refuse to entertain jurisdiction in original probate where a will has been duly admitted to probate or established in another State or country, for otherwise persons interested in the instrument

previously admitted or established might relitigate its validity anew in this State. (*Matter of Cornell*, 267 N. Y. 456, 463; *Matter of Connell, supra; Matter of Lamborn*, 168 Misc. 504; *Matter of Curtiss*, 140 Misc. 185, 186.)

This court, having issued ancillary letters on the exemplified record of the Cuban protocolization proceedings, is not now precluded from determining the question of domicile in a subsequent proceeding. A proceeding to establish a will is one *in rem* and a foreign court having jurisdiction may make a decree establishing the will without notice to any of the heirs (*Matter of Horton*, 217 N. Y. 363; *Matter of Curtiss, supra*) and this court had the right to rely, as it did here, on the foreign decree to presumptively establish residence there. (*Matter of Cornell, supra*.) The Legislature used the terms " resided " and " residence " as synonymous with " domicile " in sections 159 of the Surrogate's Court Act and 47 of the Decedent Estate Law. Where, by the laws of a foreign country, a will of a person who dies there may be established, though resident or domiciled here, the foreign decree will not be a conclusive adjudication here of the validity or effect of the will made by a person domiciled here except as to its authenticity, unless *all* interested persons have been made parties to the foreign proceeding and the issue of domicile was before the court or could have been litigated in such proceeding. (*Matter of Gifford, supra*.)

Since this court holds that domicile was not requisite to the taking of jurisdiction in the Cuban protocolization and testamentary proceedings and such courts otherwise had jurisdiction and did assume jurisdiction on the ground of " death " in Cuba, the doctrine of estoppel urged by objectant by reason of petitioner's appearance in those proceedings and her subsequent acts and statements here and in Cuba will not be applied as a bar to litigating that issue here. (*Matter of Trowbridge*, 266 N. Y. 283, 288; *Matter of Hernandez*, 172 App. Div. 467, 475, affd. 219 N. Y. 566; *Matter of Gardner*, 260 App. Div. 132; *Matter of Rothschild*, 86 Misc. 364; *Matter of Grant*, 83 Misc. 257, affd. 166 App. Div. 921.)

The doctrine of equitable estoppel will not be applied against petitioner for the record is devoid of any claim that, by reason of her acts and statements, objectant changed her legal position. (*Dater* v. *Willson*, 36 Hun 546, *supra; Hartford Accident & Ind. Co.* v. *Oles*, 152 Misc. 876; *Trenton Banking Co.* v. *Duncan*, 86 N. Y. 221.) While ordinarily petitioner's statements as to domicile may be admissible on a hearing of that issue, subject to explanation (*Matter of Ekins*, 126 Misc. 1), the very nature

of this proceeding would require refusal by the court of their admission as being prejudicial to the rights of the infant daughter. (*Matter of Myer*, 184 N. Y. 54; *Matter of Kennedy*, 167 N. Y. 163, 167; *Matter of Kupfer*, 138 Misc. 821; *Matter of Benjamin*, 136 N. Y. S. 1070, 1081; *Matter of Baird*, 47 Hun 77.)

Assuming the question of domicile was before the Cuban court in either proceeding or could have been litigated therein by petitioner, any adjudication as to domicile would not be binding on her infant daughter who was not a party to either proceeding. (*Paxton* v. *Brogan*, 12 N. Y. S. 563; *Matter of Harriman*, 124 Misc. 320; *Matter of Beban*, 135 Misc. 25; *Matter of Smith*, 175 Misc. 545.)

If this court were to find that the decedent was domiciled here, it would take a different view concerning the legal effect of any *ex parte* adjudication, if so made, that decedent was domiciled in Cuba, for such adjudication has no probative force outside the jurisdiction where rendered nor is it conclusive on the infant daughter nor will it affect her rights either under the rule of full faith and credit (*Matter of Horton, supra; Matter of Newcomb*, 192 N. Y. 238; *Taylor* v. *Syme*, 162 N. Y. 513; *Matter of McCaffrey, supra; Matter of Horton*, 175 App. Div. 447; *Matter of Eisenberg*, 177 Misc. 655; *Matter of Curtiss, supra*) or under the rule of comity. (*Matter of Gifford, supra; Matter of Connell, supra*).

A finding of no domicile here would impel this court to decline to try the question of the validity of the Cuban will and to remit such question to the Cuban courts. (*Matter of Newcomb, supra; Matter of McCaffrey, supra; Matter of Harwood, supra*.)

Accordingly, this court will determine the issue of decedent's domicile at the date of his death in Cuba on January 16, 1941. This proceeding to probate the New York will is stayed and the motion to dismiss said proceeding will be held in abeyance in accordance with the following procedure formulated by this court. If the issue of domicile is decided adversely to petitioner, the validity or invalidity of the Cuban will should be determined by the courts of Cuba. If the will is held valid by said courts, the motion to dismiss the proceeding to probate the New York will will be granted. If the Cuban will is found invalid by said courts, the petitioner may continue with her proceeding to probate the New York will. If the issue of domicile is determined favorably to petitioner, this court will take jurisdiction of a proceeding for original probate of the Cuban will and will determine all issues involving its validity except as to its establishment as a valid Cuban will. If this court, in entertaining such

jurisdiction, determines said will to be valid, the motion to dismiss the proceeding to probate the New York will will be granted. If this court holds the Cuban will invalid, the petitioner may continue with her proceeding to probate the New York will.

The issue of domicile will be placed on the Trial Calendar for hearing on March 2, 1943. The attorney for petitioner is directed to serve a notice of hearing on the attorney for objectant and on the special guardian for the infant, Laura R. Moran, and file same with proof of service on or before February 17, 1943.

Proceed accordingly.