In the Matter of the Estate of HUGO ZIETZ, JR., Deceased.

Surrogate's Court, New York County, March 9, 1950.

*Benjamin Busch* for Willy Zietz, petitioner.

*Willkie, Owen, Farr, Gallagher & Walton* for William Fitz Gibbon, respondent.

FRANKENTHALER, S. Petitioner has moved at the opening of the hearing in this proceeding, for a decree on the pleadings revoking ancillary letters of administration heretofore issued to respondent. From the petition and answer it appears that deceased died in Austria, a subject of the Principality of Liechtenstein. Administration proceedings were instituted in the latter country, resulting in the appointment of a " national administrator," from whom respondent traces his authority by designation. He urges that his designation must be recognized by this court and the petition to revoke his letters denied. It is conceded that the deceased was not at the time of his death a domiciliary of Liechtenstein.

Respondent also alleges that a treaty exists between Austria, the country in which death took place, and Liechtenstein, the country of decedent's nationality, pursuant to which the estates of those nationals of the respective signatory powers who die domiciled in the other shall be administered by the courts of nationality rather than by those of the last domicile. The treaty, it is said, constitutes a determination by the contracting powers that the country to which fealty is owed has an interest in the estates of its nationals superior to that of the country in which they were in fact domiciled.

Petitioner contends, however, that the respondent has failed to deny his allegation that decedent was merely a sojourner in and not a resident of Austria, and that such failure to deny constitutes an admission of nonresidence. He therefore ques-

tions the pertinency of the treaty. Petitioner also alleges that the terms of the treaty and of Austrian law are not as stated by respondent and do not ordain the relinquishment of jurisdiction over the estates of Austrian domiciliaries. Before considering whether the answer raises an issue as to domicile, it is necessary to determine whether residence in Austria is material in view of the conceded fact that respondent was designated by the administrator in Liechtenstein.

The questions requiring solution are two, i.e., whether this court will recognize as original the jurisdiction of a country which assumes to administer the estates of its nonresident nationals, and if it will not ordinarily do so, whether this court will recognize such jurisdiction in a case in which it is shown that, under the law of the domicile, the country of nationality is considered the proper locus of principal administration.

The designation of an ancillary administrator will be recognized by this court only if made by an original or primary administrator (*Baldwin* v. *Rice*, 183 N. Y. 55; *Matter of Cornell*, 267 N. Y. 456; *Matter of Neukircher*, 48 N. Y. S. 2d 868). A designation received from a representative who is himself acting in an ancillary capacity according to the tenets of New York law is not sufficient (*Taylor* v. *Syme*, 162 N. Y. 513; *Matter of Neukircher, supra*). That is, the ancillary proceedings in New York must stem from the primary proceeding and not from some other secondary source (2 Jessup's Redfield on Surrogate's Law and Practice, § 1614 *et seq.*). The entire theory of ancillary administration is based upon the principle that the ancillary representative acts in an auxiliary capacity, as an aid to that chief administration which is to be conducted in the principal jurisdiction (*Wedemann* v. *United States Trust Co.*, 258 N. Y. 315; *Matter of Van Bokkelen*, 156 Misc. 439, mod. 247 App. Div. 721).

Under New York law, nationality is not recognized as a sufficient basis for the assumption of original jurisdiction to administer estates. Only the authority of one entitled to administration under the law of the domicile will be accorded that recognition (*Taylor* v. *Syme, supra*; *Matter of Connell*, 221 N. Y. 190; *Matter of S'Jacob*, N. Y. L. J., June 26, 1943, p. 2491, col. 6). "Principal administration is properly that of the country or State only where the deceased person had his last domicil" (4 Schouler on Wills, Executors and Administrators [6th ed.], § 3515, p. 2813). "Although letters may purport to be principal or original in their form, the foreign domicile of the decedent of the estate establishes that they are actually ancillary.

(1 Twyeffort's New York Estates & Surrogates [2d ed.], p. 184; *Baldwin* v. *Rice,* 100 App. Div. 241, affd. 183 N. Y. 55.)'' (*Matter of Worch,* 124 Misc. 380, 381.)

Section 160 of the Surrogate's Court Act defines the mechanics to be employed in the procurement of ancillary letters. A pertinent portion of that section provides that '' in cases where the decedent, at the time of his death, resided without the United States, upon the presentation to such surrogate's court of satisfactory proof that the party so applying  *  *  *  is entitled to the possession in the foreign country of the personal estate of such decedent, the surrogate's court  *  *  *  must issue ancillary letters of administration in accordance with such application  *  *  *.'' A reading of that section indicates that in the phrase '' entitled to possession in the foreign country '' the words '' foreign country '' refer exclusively to the country in which the decedent '' resided without the United States,'' residence being synonymous in this case with domicile (*Matter of Katz,* 135 Misc. 861).

The law thus requires that the court refer initially to the country of domicile only. It cannot recognize a national administrator as such.

However, according to the allegations of respondent, the treaty between Austria and Liechtenstein constitutes a renunciation by each country of any interest in the administration of the estates of nationals of the other. If the domiciliary country, to whose law this court must refer, has proclaimed such a treaty, no reason appears why this court should not accord recognition to that treaty and accept that reference by the domicile to the law of the nationality.

The statute (Surrogate's Ct. Act, §§ 160, 161), as above construed, requires the issuance of ancillary letters to the persons entitled to possession in the country of domicile. New York is admittedly an ancillary jurisdiction and this court must simply select the country it will recognize as entitled to control the chief administration. The country which it would normally select, it is said, has renounced its power in favor of another and will not appoint its own fiduciary, accepting instead the appointment made in the country of nationality. Under the alleged treaty there is no one in the domicile who may take possession of assets and administer the estate, other than the administrator appointed by the courts of the country of nationality. If the treaty contains the alleged provisions, it would be idle for our courts to insist upon a designation from a local administrator in the country of domicile, if under the law thereof no separate administrator may be appointed. Hence this court

must accept the reference by the law of the domicile to the law of the country of nationality.

The principle of reference outlined above has been explicitly approved by the English court in *Matter of Trufort* (36 Ch. D. 600). A question was raised therein concerning the effect to be given to a judgment rendered by the court in the country of nationality concerning the administration of a decedent's estate. Whether that judgment was to be regarded as *res judicata* and binding upon the English court depended upon whether the court rendering the decision was the court of primary jurisdiction. The court found that, as here, the country of domicile had relinquished its primary jurisdiction in favor of the courts of nationality. Recognition was accorded to that transfer, the court saying (at pp. 611–612): " It is, indeed, admitted that the domicil of the testator was French, but according to the law of *France* (as stated by the Defendant's own witnesses) the right to his succession depends on his nationality. That nationality it is said was Swiss, and by virtue of the treaty between *France* and *Switzerland* in 1869 the right of succession falls to be determined by the tribunals of *Zurich* * * *. The testator's nationality then being Swiss at the time of his death it follows that the *Zurich* tribunals are those which according to the law of the testator's domicil have jurisdiction to decide on the right of succession to his estate * * *."

It has been stated that " where the law of the State in which a party has a domicile and the law of the country of which he is a subject agree that the law of one of them is to govern, the rights created by such law should be enforced or recognized in all jurisdictions in which either the *lex domicilli* or the *lex patriae* is regarded as the proper rule." (Lorenzen, The Renvoi Theory and the Application of Foreign Law, 10 Col. L. R. 327, 334; see, also, Dicey on Conflict of Laws [5th ed.], p. 868.)

The court concludes that the place of decedent's domicile is a material issue in this proceeding. That he was not a domiciliary of Liechtenstein is not sufficient to require revocation of respondent's letters. The court also holds that the answer, and more particularly paragraphs XI (1) and XII thereof, contains a sufficient denial of petitioner's allegations to pose a genuine issue of fact concerning domicile in Austria. The law of Austria, including any bilateral treaties entered into between that country and Liechtenstein concerning estate administration claimed to be part of such law, must also be proven upon the hearing, the date for which will be fixed after conference with counsel.

Proceed accordingly.